**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| GARRY GILL, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> BLUEBIRD BIO, INC., ANDREW OBENSHAIN, CHRISTOPHER KRAWTSCHUK, and RICHARD A. COLVIN, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 1:24-cv-10803 <br> ) <br> ) **ORAL ARGUMENT REQUESTED** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ......................................................................................... 1

FACTUAL BACKGROUND .............................................................................................. 3

ARGUMENT ...................................................................................................................... 7

I.      PLAINTIFF FAILS TO ALLEGE ANY ACTIONABLE MISSTATEMENT OR
        OMISSION. ............................................................................................................. 8

        A.      The Amended Complaint Fails to Allege a Single False or Misleading
                Statement or Omission About the Likelihood of Receiving a Boxed Warning...... 8

        B.      The Amended Complaint Fails to Allege an Actionable False or Misleading
                Statement or Omission About the Likelihood of Receiving a Priority Review
                Voucher ...................................................................................................... 14

        C.      All of the Purported Misstatements are Forward-Looking and Not Actionable
                Pursuant to PSLRA's Safe Harbor ............................................................ 17

II.     THE AMENDED COMPLAINT COMES NOWHERE CLOSE TO SATISFYING
        THE HEIGHTENED PLEADING REQUIREMENTS FOR SCIENTER. ..................... 19

        A.      The Amended Complaint Fails to Allege Any Facts to Demonstrate
                Defendants' Knowledge of Falsity at Any Time During the Class Period........... 20

        B.      The Only Theory Advanced As To A Possible Motive to Defraud Investors
                Fails As A Matter of Law ........................................................................... 22

        C.      Inferences of Nonculpable Intent Outweigh Plaintiff's Implausible Theory........ 23

III.    PLAINTIFF'S CONTROL PERSON CLAIMS MUST BE DISMISSED. ...................... 25

CONCLUSION.................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACA Fin. Guar. Corp. v. Advest, Inc.*,
512 F.3d 46 (1st Cir. 2008)...................................................................................7, 15, 19

*In re Biogen Inc. Sec. Litig.*,
193 F. Supp. 3d 5 (D. Mass. 2016) ...............................................................................18, 22

*In re Boston Sci. Corp. Sec. Litig.*,
686 F.3d 21 (1st Cir. 2012).......................................................................................19

*Brennan v. Zafgen, Inc.*,
199 F. Supp. 3d 444 (D. Mass. 2016), *aff'd*, 853 F.3d 606 (1st Cir. 2017)..............................19

*Brill v. Invivyd, Inc.*,
No. 1:23-cv-10254-JEK, 2024 WL 4228832 (D. Mass. Sept. 18, 2024)................................21

*City of Bristol Pension Fund v. Vertex Pharms. Inc.*,
12 F. Supp. 3d 225 (D. Mass. 2014) ................................................................................17, 19

*Cody v. Conformis, Inc.*,
199 F. Supp. 3d 409 (D. Mass. 2016) ...........................................................................3, 12, 15

*Corban v. Sarepta Therapeutics, Inc.*,
No. 14–cv–10201–IT, 2015 WL 1505693 (D. Mass. Mar. 31, 2015) ......................................3

*Corban v. Sarepta Therapeutics, Inc.*,
868 F.3d 31 (1st Cir. 2017).....................................................................................................23

*Ezra Charitable Tr. v. Tyco Int'l Ltd.*,
466 F.3d 1 (1st Cir. 2006).......................................................................................................20

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
54 F.4th 42 (1st Cir. 2022)............................................................................................9, 13, 21

*Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*,
778 F.3d 228 (1st Cir. 2015)......................................................................................20, 24, 25

*Foley v. Wells Fargo Bank, N.A.*,
772 F.3d 63 (1st Cir. 2014).......................................................................................................3

*In re Galileo Corp. S'holders Litig.*,
127 F. Supp. 2d 251 (D. Mass. 2001) ......................................................................................22

*Ganem v. InVivo Therapeutics Holdings Corp.*,
  845 F.3d 447 (1st Cir. 2017)..................................................................................7, 10, 21

*Harrington v. Tetraphase Pharms., Inc.*,
  No. 16-cv-10133, 2017 WL 1946305 (D. Mass. May 9, 2017)...............................................18

*Hill v. Gozani*,
  638 F.3d 40 (1st Cir. 2011).......................................................................................8, 17

*In re iRobot Corp. Sec. Litig.*,
  527 F. Supp. 3d 124 (D. Mass. 2021) ...................................................................................20

*Kader v. Sarepta Therapeutics, Inc.*,
  887 F.3d 48 (1st Cir. 2018)...............................................................................12, 19, 24

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001)...................................................................................................22

*Leavitt v. Alnylam Pharms., Inc.*,
  451 F. Supp. 3d 176 (D. Mass. 2020) ...........................................................................8, 17, 18

*In re Lernout & Hauspie Secs. Litig.*,
  286 B.R. 33 (D. Mass. 2002) .................................................................................................25

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
  601 U.S. 257 (2024)...................................................................................................................7

*Mehta v. Ocular Therapeutix, Inc.*,
  955 F.3d 194 (1st Cir. 2020)..........................................................................................24, 25

*Miss. Pub. Emps. Ret. Sys. v. Bos. Sci. Corp.*,
  523 F.3d 75 (1st Cir. 2008)....................................................................................................24

*Pizzuto v. Homology Meds., Inc.*,
  No. 1:23-CV-10858-AK, 2024 WL 1436025 (D. Mass. Mar. 31, 2024) ........................ *passim*

*Ponsa-Rabell v. Santander Secs. LLC*,
  35 F.4th 26 (1st Cir. 2022)........................................................................................................7

*In re Smith & Wesson Holding Corp. Sec. Litig.*,
  669 F.3d 68 (1st Cir. 2012)....................................................................................................19

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007)........................................................................................................ *passim*

*Thant v. Karyopharm Therapeutics Inc.*,
  43 F.4th 214 (1st Cir. 2022)...................................................................................................13

*In re The First Marblehead Corp. Sec. Litig.*,
   639 F. Supp. 2d 145 (D. Mass. 2009) ......................................................................9

**Statutes**

15 U.S.C. § 78j(b) .......................................................................................... *passim*

15 U.S.C. § 78t(a) .....................................................................................................24

15 U.S.C. § 78u-4 .............................................................................................2, 4, 7, 8

15 U.S.C. § 78u-5 .....................................................................................................17

**Other Authorities**

Federal Rule of Civil Procedure 9(b)........................................................................2, 7, 8

17 C.F.R. 240.10b-5.....................................................................................................7

Defendants bluebird bio, Inc. ("bluebird"), Andrew Obenshain, Christopher Krawtschuk, and Richard A. Colvin (collectively, the "Defendants") respectfully submit this Memorandum of Law in support of their Motion to Dismiss Plaintiff's Amended Complaint (the "Amended Complaint" or "AC").

## PRELIMINARY STATEMENT

bluebird is a biotechnology company that researches, develops, and commercializes gene therapies to treat severe genetic diseases, including transfusion-dependent ß-thalassemia, cerebral adrenoleukodystrophy, and Sickle Cell Disease ("SCD").  On April 24, 2023, bluebird submitted a Biologics License Application ("BLA") to the U.S. Food and Drug Administration ("FDA") seeking approval for lovotibeglogene autotemcel ("lovo-cel" or "Lyfgenia"), a one-time gene therapy treatment for SCD.  SCD is a complex and progressive genetic disease associated with debilitating and unpredictable pain crises, irreversible damage to vital organs, and early death.  In the United States, half of the people living with SCD do not live past the age of 40.  bluebird applied for, and received, priority review of the lovo-cel BLA, which reduced the FDA's review time of the application from ten to six months.  As part of the lovo-cel BLA, bluebird also applied to receive from the FDA a Priority Review Voucher ("PRV") that could be used to reduce FDA review time of a future bluebird application or sold to another company.

On December 8, 2023, bluebird announced that lovo-cel had received FDA approval that day.  As part of its approval decision, the FDA required the placement of a boxed warning on the drug label alerting patients and doctors to a risk of hematologic malignancy.  The FDA also declined bluebird's request for a PRV.  On the same day, a competitor of bluebird announced that it, too, had received approval for a gene therapy treatment for SCD, without a boxed warning of any similar risk.  Following the December 8 announcements, bluebird's stock price dropped.

- 1 -

Stock drops are nothing new to the biotech sector (nor are strike suits like this one).  In this putative securities class action, Plaintiff attempts to attribute the decrease in bluebird's stock price to a handful of alleged misstatements and omissions between April 24 and December 8, 2023 (the "Class Period") about the likelihood of (1) bluebird receiving a PRV and (2) Lyfgenia receiving FDA approval without a boxed warning on its label.  Plaintiff claims these statements made over the course of four different communications—a press release, an investor conference presentation, and two earnings calls—created the "false impression" that bluebird "could obtain FDA approval for lovo-cel without any box warnings" and that bluebird "would be granted a priority review voucher."  AC ¶ 5.  The Amended Complaint seeks relief for these purported "misstatements" pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act and Rule 10b-5 thereunder.

But the Amended Complaint fails to identify a single statement or omission that communicates either of those "impressions," much less one that is false or misleading.  To the contrary, not only did bluebird repeatedly warn investors that the FDA might require a boxed warning for lovo-cel, it also specifically warned investors that the FDA might require disclosure of the risk of hematologic malignancy on the label.  bluebird also repeatedly reminded investors that it may not be granted a PRV.  Thus, none of the statements are actionable.  Moreover, all of the cited statements related to the drug label or PRV are forward-looking and accompanied by meaningful cautionary language and, therefore, protected by the Private Securities Litigation Reform Act's ("PSLRA") Safe Harbor.  Additionally, the Amended Complaint falls far short of pleading scienter on the part of the Defendants at all, let alone satisfying the heightened pleading standards that apply to securities fraud claims arising not only from Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"), but also from the PSLRA and federal decisions applying the same. In particular, the Amended Complaint supplies no plausible explanation as to whether and how

any Defendant *knew* that any statement was misleading, and fails to supply the "cogent and compelling inference of fraudulent intent" to mislead investors that the law requires.

For the reasons set forth herein, the Amended Complaint fails to adequately plead any cause of action. Respectfully, this Court should dismiss it with prejudice.

## FACTUAL BACKGROUND[1]

bluebird has three FDA-approved gene therapies: Zynteglo, Skysona, and, most recently, Lyfgenia. AC ¶ 27. Lyfgenia (a/k/a lovo-cel before approval), bluebird's gene therapy for SCD, is a one-time lentiviral vector gene therapy that is custom-designed to treat the underlying cause of SCD and potentially resolve vaso-occlusive events ("VOEs").[2] AC ¶ 78.

On April 24, 2023, bluebird submitted a BLA to the FDA for lovo-cel for patients with SCD ages 12 and older with a history of VOEs. AC ¶ 3. In connection with the BLA, bluebird requested (i) priority review, which, if granted, would shorten the FDA's review of the lovo-cel BLA from the standard ten-month review period to six months from the submission date, and (ii) a Priority Review Voucher (or PRV) which, if granted, would allow bluebird or, if sold by bluebird, another company to get expedited review for a different FDA submission. AC ¶¶ 3-4. Receiving priority review of the lovo-cel BLA is distinct from receiving a PRV that could be used on a different drug approval application. *Compare* AC ¶ 3 (explaining priority review), *with* AC ¶ 4 (explaining PRV).

---

[1] Defendants assume, as they must, that the Amended Complaint's allegations are true. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). In addition, "[c]ourts are permitted, in some instances, to consider . . . documents that were not attached to the complaint," *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 74 (1st Cir. 2014), "includ[ing] documents the authenticity of which are not disputed by the parties; . . . documents central to plaintiffs' claim; or . . . documents sufficiently referred to in the complaint." *Id.* (quotation marks omitted). A defendant's "public [SEC] filings . . . are clearly [documents] in which the court may take judicial notice." *Corban v. Sarepta Therapeutics, Inc.*, 2015 WL 1505693, at *5 n.4 (D. Mass. Mar. 31, 2015). Courts routinely consider the entire content of quarterly earnings calls, press releases, and public filings, like those incorporated by reference into the Amended Complaint and attached in full to the Declaration of Robert Jones, filed concurrently with this motion. *See, e.g., Cody v. Conformis, Inc.*, 199 F. Supp. 3d 409, 413 n.3 (D. Mass. 2016).
[2] VOEs are acute complications associated with SCD. AC ¶ 3 n.1.

Plaintiff purports to challenge statements or purported omissions from four events during which bluebird's statements related in some fashion to the lovo-cel BLA.  Because Plaintiff does not identify the specific statements he challenges, the entirety of the block quotes included in the Amended Complaint are reproduced in Exhibit A (Chart of Challenged Statements Cited in the Amended Complaint).

***April 24, 2023 Press Release***

On April 24, 2023, bluebird issued a press release announcing the lovo-cel BLA submission (the "April 24 Press Release").  The Amended Complaint excerpts four paragraphs from the April 24 Press Release, none of which address the lovo-cel label or PRV.  *See* AC ¶ 45; *see also* Ex. A at 1.

The April 24 Press Release also contains a section titled "About lovotibeglogene autotemcel (lovo-cel)," which states that the lovo-cel BLA submission included "[s]erious adverse events related to lovo-cel," including that three patients had passed away.  Ex. B (4/24/23 Press Release).  It concludes with a paragraph titled "Forward-Looking Statements," stating that the press release contains forward-looking statements, including related to "the possible approval of lovo-cel by FDA, the expected timing relating to such potential regulatory approval and the fact that a potential granting of Priority Review may shorten the FDA's review of our BLA application to six months."  *Id.*  It then directs the reader to bluebird's 2022 10-K, filed March 29, 2023, and other filings that identify risk factors for bluebird.  *See id*.  Per the 2022 10-K, those risk factors included the possibility of future cases of leukemia and other cancers in the clinical or commercial setting, which "could result in a more restrictive label."  Ex. C at 29 (3/29/23 10-K).  It also warned investors that:

> Even if a product candidate such as lovo-cel is ultimately approved . . . serious
> safety events may result in the product being removed from the market or its market

opportunity being significantly reduced. . . . We or others may later identify undesirable side effects or adverse events caused by such products, and a number of potentially significant negative consequences could result, including but not limited to: . . . **regulatory authorities may require additional warnings on the label,** ***including 'boxed' warnings***.

*Id.* (emphasis added). Prior to and throughout the Class Period, bluebird repeatedly warned investors of the possibility of lovo-cel receiving a boxed warning. *See* bluebird bio, Inc., 2022 Annual Report (ARS) at 30 (Apr. 28, 2023) ("regulatory authorities may require additional warnings on the label, including 'boxed' warnings"); bluebird bio, Inc., Quarterly Report (Form 10-Q) at 28 (May 9, 2023) (same); bluebird bio, Inc., Quarterly Report (Form 10-Q) at 30 (Aug. 8, 2023) (same); bluebird bio, Inc., Quarterly Report (Form 10-Q) at 33 (Nov. 7, 2023) (same).

### *May 11, 2023 Bank of America Conference*

On May 11, 2023, bluebird presented at Bank of America's Annual Healthcare Conference (the "May 11 B of A Conference"). AC ¶ 48. The Amended Complaint pastes several questions and answers from the transcript, which did not include any statements on the PRV and only one statement regarding CEO Andrew Obenshain's opinion that he "think[s]" the FDA would focus on safety and efficacy in the label. *See* AC ¶ 48; *see also* Ex. D (5/11/23 Conference Presentation and Q&A).

### *August 8, 2023 Q2 2023 Earnings Call*

On August 8, 2023, bluebird held its second quarter 2023 earnings call (the "Q2 2023 Earnings Call"). AC ¶ 50. At the beginning of the Q2 2023 Earnings Call, Courtney O'Leary, director of Investor Relations, reviewed the company's safe harbor statement, which highlighted

that the call would contain forward-looking statements and directed listeners to bluebird's recent

SEC filings for a description of relevant risks.  Ex. E at 4 (Q2 2023 Call Transcript).[3]

The Amended Complaint copies and pastes substantial portions of a transcript of the Q2

2023 Earnings Call in which CFO Christopher Krawtschuk stated "it's possible we could receive

a PRV," which bluebird might sell to a third party.  AC ¶ 50; *see also* Ex. E at 15 (Q2 2023 Call

Transcript).  CMO Richard Colvin also confirmed that bluebird submitted the BLA for treatment

of patients "between 12 and 18 [years of age] and over."  *See id.*

***November 7, 2023 Q3 2023 Earnings Call***

On November 7, 2023, bluebird held its third quarter 2023 earnings call (the "Q3 2023

Earnings Call").  AC ¶ 52.  At the beginning of the call, Courtney O'Leary read bluebird's safe

harbor statement, which was nearly identical to the statement read at the Q2 2023 Earnings Call.

Ex. F at 4 (Q3 2023 Call Transcript).

The Amended Complaint copies and pastes ten paragraphs from the call transcript about a

variety of issues.  First, the Amended Complaint quotes Mr. Obenshain's statement in response to

questions about the lovo-cel launch and lack of an "Ad Com" meeting, which does not discuss to

the label or PRV.  *See* AC ¶ 52; *see also* Ex. F at 4, 5 (Q3 2023 Call Transcript).  Next, the

Amended Complaint pastes a portion confirming the advance agreement to sell the potential PRV,

although it was not factored into the cash runway.  *See* AC ¶ 54; *see also* Ex. F at 5 (Q3 2023 Call

Transcript).  Finally, the Amended Complaint quotes from the question-and-answer portion of the

call, in which Mr. Obenshain stated his expectation that there would be a reference to the patient

---

[3] bluebird's safe harbor statement specifically referenced the Company's most recent 10-Q.  That same day, the company filed a 10-Q that discussed the risk of a boxed warning for lovo-cel.  *See* Ex. I at 30 (8/8/23 10-Q) ("regulatory authorities may require additional warnings on the label, including 'boxed' warnings").

deaths on the label, although "[i]n what part of the label or where is yet to be determined, but certainly, they will be in there." *See* AC ¶ 56; *see also* Ex. F at 14, 15 (Q3 2023 Call Transcript).

***December 8, 2023 Press Release***

On December 8, 2023, the FDA approved Lyfgenia with a boxed warning for the risk of hematological malignancy and rejected bluebird's request for a PRV. AC ¶¶ 78, 84 n.4. The Amended Complaint incorporates by reference the December 8, 2023 FDA approval letter, which shows that bluebird was not informed about the FDA's final decision on the BLA, including the required boxed warning and rejected PRV, until that date. Ex. G (12/8/23 FDA Letter). The same day, bluebird announced by press release that it had received FDA approval of Lyfgenia with a boxed warning and that the FDA had not granted the PRV request. AC ¶ 78; Ex. H (12/8/23 Press Release). Also on December 8, the FDA approved Vertex's drug Casgevy for SCD in patients 12 years or older without a boxed warning. AC ¶ 79. bluebird stock dropped following these announcements. AC ¶ 86.

## ARGUMENT

To state a claim for securities fraud under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder, Plaintiff must allege six elements: (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the sale or purchase of a security; (4) reliance; (5) economic loss; and (6) loss causation. *Ganem v. InVivo Therapeutics Holdings Corp.*, 845 F.3d 447, 454 (1st Cir. 2017). The PSLRA and Rule 9(b) impose a "notably strict and rigorous" pleading standard, requiring a securities fraud plaintiff to plead each of these elements "with particularity." *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 58 n.7 (1st Cir. 2008).

To adequately plead the first element given the heightened pleading requirements, Plaintiff must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." *Id.* at 58; 15 U.S.C. § 78u-4(b)(1). Material omissions are actionable

"only if the omission renders affirmative statements made misleading." *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 265 (2024).  Thus, when claiming an actionable omission, "a plaintiff must first identify a statement made by defendants, show how the omission rendered that statement misleading, and finally establish that there was a duty to disclose the omitted information." *Ponsa-Rabell v. Santander Secs. LLC*, 35 F.4th 26, 34 (1st Cir. 2022). Furthermore, with respect to each alleged misstatement or omission, Plaintiff must "state with particularity facts giving rise to a strong inference" that each Defendant acted with the requisite scienter. *Hill v. Gozani*, 638 F.3d 40, 55-56 (1st Cir. 2011).  This requires that "the allegations [] be more than merely plausible or reasonable—[they] must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* (internal quotation marks omitted).

## I.  PLAINTIFF FAILS TO ALLEGE ANY ACTIONABLE MISSTATEMENT OR OMISSION.

The Amended Complaint does not adequately allege a single actionable misstatement or omission, much less with the particularity required by the PSLRA and Rule 9(b).  Plaintiff is obligated in the pleadings to state "the time, place, and content of the alleged false or fraudulent representations" and "specify . . . the reason or reasons why the statement is misleading." *Leavitt v. Alnylam Pharms., Inc.*, 451 F. Supp. 3d 176, 182 (D. Mass. 2020) (quoting 15 U.S.C. § 78u-4(b)(1)).  Whether a complaint adequately pleads an actionable misstatement or omission is determined on a statement-by-statement basis, not "on the basis of the general flavor derived from [a company's] collective statements over a long period of time." *Pizzuto v. Homology Meds., Inc.*, 2024 WL 1436025, at *7 (D. Mass. Mar. 31, 2024) (internal citation omitted).

### A.  The Amended Complaint Fails to Allege a Single False or Misleading Statement or Omission About the Likelihood of Receiving a Boxed Warning.

Plaintiff fails to allege with particularity facts that demonstrate why any of the quoted statements addressing the possible contents of the label or risk of hematologic malignancy were

misleading. Instead, Plaintiff simply copies-and-pastes large portions of Defendants' statements—whether or not they related to lovo-cel's label—during the Class Period and then alleges that all of the statements together gave investors a "false impression" that lovo-cel would be approved by the FDA without a boxed warning. AC ¶¶ 5, 58. These are quintessential conclusory allegations that courts routinely dismiss. *See, e.g.*, *Pizzuto*, 2024 WL 1436025, at *11. The Amended Complaint leaves Defendants to guess which statements were purportedly misleading and why.

In none of the statements do any of the Defendants assert that lovo-cel would be approved by the FDA without a boxed warning. The statements on their face made clear that bluebird anticipated the FDA would require disclosure of the risk of hematologic malignancy on the drug label, although it did not know precisely where. *See* AC ¶ 56. Moreover, bluebird *did* disclose the risk that lovo-cel might receive a boxed warning—before and during the Class Period—repeatedly telling investors that "regulatory authorities may require additional warnings on the label, including 'boxed' warnings." Ex. C at 30 (3/29/23 Form 10-K); *see also supra* at 5 (citing other filings). First Circuit case law is clear that "[i]t is not a material omission to fail to point out information of which the market is already aware." *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 54 F.4th 42, 56 (1st Cir. 2022); *see also In re The First Marblehead Corp. Sec. Litig.*, 639 F. Supp. 2d 145, 155 (D. Mass. 2009) (dismissing Section 10(b) claim because defendant disclosed information alleged to have been concealed).

Below, we address each statement that Defendants believe Plaintiff challenges in turn.

### 1. *April 24 Press Release*

In the April 24 Press Release, bluebird disclosed that it had submitted a BLA for lovo-cel. AC ¶ 45. The April 24 Press Release itself makes no mention of, let alone representations about, the FDA's future decision about the contents of the lovo-cel label. AC ¶ 45. At best, Plaintiff's

theory must be that bluebird was required to disclose, the very day that it *submitted* the BLA, precisely what determinations the FDA would make regarding the contents of the product label. Plaintiff offers no specific allegation for whether or how bluebird could have known what the FDA would eventually decide.

To the extent Plaintiff argues that, whenever they discussed pending FDA approval, Defendants were required to disclose that bluebird could not obtain FDA approval without a boxed warning because lovo-cel specifically and gene therapies more generally are dangerous, *see* AC ¶¶ 59-70, the First Circuit is clear that such conclusory allegations and unsupported speculation necessarily fail. *See Ganem,* 845 F.3d at 457 (rejecting conclusory, unsupported allegation that "because, in retrospect, the test lagged significantly behind the proposed timeline, the timeline must have always been impossible to achieve"). Plaintiff includes nothing more than conclusory allegations and "unsupported speculation" that lovo-cel is so dangerous as to make it impossible to secure FDA approval without a boxed warning. *See id.* at 457. At bottom, Plaintiff disagrees with how to interpret the clinical data, but Plaintiff's "own speculation and conjecture about [bluebird's] business decisions cannot substitute for well-pleaded facts." *Id.* at 456; *Pizzuto*, 2024 WL 1436025, at *9 (Without more, "[i]nterpretations of company data are non-actionable opinions.").

### 2. *May 11 B of A Conference*

At the May 11 B of A Conference, an analyst asked CEO Andrew Obenshain if there were "specific elements of the label that you feel like are important one way or another in terms of being market limiting or giving you more latitude to operate in the space." AC ¶ 48. Mr. Obenshain responded: "I don't think there's any one particular area that the FDA would focus on overall. I think the – if we look back at our ZYNTEGLO AdCom, it was the efficacy and safety, which is

- 10 -

pretty standard. So I don't think there's any one element that they're going to actually hold in on versus others." *Id*.

Mr. Obenshain's statements do not purport to address whether a boxed warning would ultimately be required by the FDA. It broadly cites two areas on which Mr. Obenshain expected the FDA would "focus." The pleadings offer no particularized allegations that Mr. Obenshain's response was false or misleading, whether directly or by omission. Indeed, the Amended Complaint acknowledges that the FDA's review, in fact, focused on efficacy and safety. AC ¶ 78. There is no particularized allegation suggesting that there existed any material information to withhold—*i.e.*, that Mr. Obenshain (or anyone else at bluebird) would have known in May, just a few weeks after submitting the BLA for approval and six months prior to the FDA's final approval decision in December, what determination the FDA would announce regarding the label's contents, even assuming the product itself was eventually approved.

### 3. *Q2 2023 Earnings Call*

The Amended Complaint fails to cite any statement or omission whatsoever from the Q2 2023 Earnings Call related to the lovo-cel boxed warning, and Defendants are unable to guess what statements, if any, are claimed to be misleading regarding the label. AC ¶ 50.

### 4. *Q3 2023 Earnings Call*

The Amended Complaint cites two statements from the Q3 2023 Earnings Call relating to the lovo-cel label. Neither is plausibly misleading and, to the contrary, each of the statements, taken in context, squarely undercut the so-called "false impression" on which Plaintiff hangs his claims.

In response to a question about whether bluebird could speak on whether it is discussing labeling with the FDA, Mr. Obenshain stated, "Yes. So on the BLA, we don't comment on ongoing

interactions with the [FDA].  So we've submitted for the lovo-cel the treatment of patients with sickle cell disease is 12 and older who have a history of vaso-occlusive events, and we are confident in the robustness and maturity of our BLA package and the review process."  AC ¶ 56. Plaintiff does not appear to claim this statement is misleading.  It merely states bluebird's policy of not commenting on ongoing discussions with the FDA during the approval process.  But assuming Plaintiff claims Mr. Obenshain misleadingly *omitted* to say that the FDA would require a boxed warning, as with prior statements, not a single particular allegation establishes any basis for inferring that Mr. Obenshain was aware in early November what decisions concerning the product approval and the label the FDA would announce on December 8, 2023.  In any event, a policy of not commenting on ongoing interactions with the FDA is hardly surprising; it is well-established that a 10b-5 claim cannot rest on a failure to disclose "the details of interim 'regulatory back-and-forth' with the FDA."  *See Kader v. Sarepta Therapeutics, Inc.*, 887 F.3d 48, 59 (1st Cir. 2018).

Next, according to the Amended Complaint, Mr. Obenshain was asked about two patients during clinical trials who had developed leukemia and "whether there is a scenario where you get a label that includes risk of secondary malignancies while your competitor does not?"  AC ¶ 56. In response, Mr. Obenshain reminded investors that two patients passed away who had "cancer related to the transplant procedure involving lovo-cel," but not due to insertional oncogenesis, and acknowledged that "it is likely that we will have a mention of that in the safety events in the label. In what part of the label or where is yet to be determined, but certainly, they will be in there. That's something that we've known for quite a while."  *Id*.  Mr. Obenshain's response discussed negative information not included in the listener's question (the passing of the two patients) and acknowledged the very concern Plaintiff complains bluebird *hid from investors* (risk that the FDA

- 12 -

would require language on the label disclosing the risk of hematologic malignancies).  The fact that Mr. Obenshain did not go on to speculate precisely where on the label, including in a boxed warning, such a risk may appear does not render his statements misleading.  Accurate risk disclosures do not require a company "to then catalog every particular future issue that could be imagined."  *Cody*, 199 F. Supp. 3d at 420 (dismissing Section 11 claim and holding that prospectus's "general, and at times highly cautionary, language" was "not so incomplete as to mislead" (internal quotation marks omitted)).  Such a requirement would not only "obviously be impractical," but "ultimately counterproductive."  *Id.*  Regardless, bluebird had previously disclosed the possibility of receiving a boxed warning for lovo-cel in its 2022 10-K, among other public filings.  Ex. C at 29 (3/29/23 10-K); *see also supra* at 5 (citing other filings).  Because it is "not a material omission to fail to point out information of which the market is already aware," Plaintiff has not alleged a material omission.  *In re Fin. Oversight*, 54 F.4th at 56.  No investor could reasonably have interpreted Mr. Obenshain's statement, "in what part of the label or where is yet to be determined," as a guarantee that lovo-cel would *not* receive a boxed warning.  *See Thant v. Karyopharm Therapeutics Inc.*, 43 F.4th 214, 225 (1st Cir. 2022) (holding that "no reasonable investor would interpret" company's positive assessment of drug's safety profile "to mean the drug was benign" because market was informed that company's assessment "was in no way a guarantee that the FDA would have a similar view").

Later in the Amended Complaint, Plaintiff alleges that "[t]he test results of lovo-cel and information regarding the cause of death for the three patients was withheld from the public," AC ¶ 88, and presumably therefore rendered certain, unspecified statements misleading when made. This allegation is false and flatly contradicted by the April 24 Press Release, where bluebird stated, "Three of 50 patients (6%) died, one due to sudden cardiac death and two due to leukemia."  Ex.

B (4/24/2023 Press Release).  Plaintiff also alleges that investors "had no way of knowing that lovo-cel was the cause of death for the three patients in Blue's trials."  AC ¶ 88.  This is wholly conclusory and the Amended Complaint provides no support, much less particularized allegations, for the unfounded claim that lovo-cel *caused* the deaths of the three patients.

Plaintiff appears to then change tack to argue that Defendants "intentionally downplayed the associated risks and told investors that risks would only be included on the safety events on the label."  AC ¶ 66.  This argument, too, fails.  In *Pizzuto*, the Court dismissed Section 10(b) claims where plaintiffs alleged that Homology failed to disclose the risks posed by their drug candidate that would require modifying the study protocol and ultimately result in the FDA's issuance of a clinical hold on the trial.  *Pizzuto*, 2024 WL 1436025, at *11-12.  The Court reasoned that Homology had adequately disclosed both the safety risks and the possibility of "regulatory headwinds" that might impact regulatory approval because "the overall risk [was] disclosed and the nature of the future risk remain[ed] uncertain," and that the plaintiffs failed to plead sufficient facts, such as FDA communications, "to support their conclusion that Homology knew the steroid regimen was 'insufficient' and 'unsafe' at the time."  *Id.* at *12.  The same is true here.

**B.      The Amended Complaint Fails to Allege an Actionable False or Misleading Statement or Omission About the Likelihood of Receiving a Priority Review Voucher.**

Likewise, Plaintiff fails to allege with particularity facts that demonstrate why any of the quoted statements were misleading with respect to the PRV, whether directly or by omission.  As with the boxed warning, Plaintiff fails even to identify specific misleading statements and resorts to block quotes that he generally argues gave the "false impression" that bluebird could receive a PRV when, in reality, the lovo-cel BLA did not qualify for a PRV.  *See, e.g.*, AC ¶¶ 5, 45, 48, 58.  These conclusory allegations are still insufficient to state a claim.  *See Pizzuto*, 2024 WL 1436025, at *7.

Taking each statement in turn underscores these points.

### 1.    *April 24 Press Release*

The Amended Complaint does not identify any statement whatsoever in the April 24 Press Release addressing whether the FDA would grant bluebird a PRV.  In fact, the April 24 Press Release does not reference a PRV *at all*.  *See* Ex. B (4/24/23 Press Release).  As noted above, Plaintiff's theory must be that bluebird was required to disclose, the very day that it *submitted* the BLA, precisely what determinations the FDA would make regarding its request for a PRV. Plaintiff offers no specific allegation for whether or how bluebird could have made such a disclosure on the day the BLA was submitted.  The FDA may have concluded that lovo-cel shared an active ingredient with another product *after* the disputed statements were made, AC ¶ 84, but there are no particularized allegations suggesting that not receiving a PRV was a foregone conclusion.  At most, Plaintiff alleges "fraud by hindsight"—that because the FDA eventually concluded that the drugs shared an active ingredient, Defendants must have known the FDA would reach this conclusion and not grant a PRV.  This argument fails.  Courts in this Circuit have repeatedly rejected attempts to plead securities fraud based on "fraud by hindsight" where a company's optimism turned out to be unfounded.  *See, e.g.*, *ACA Fin. Guar. Corp.*, 512 F.3d at 62.

### 2.    *May 11 B of A Conference*

Likewise, the Amended Complaint fails to cite any statement from the May 11 B of A Conference that relates to whether bluebird would receive a PRV.  Instead, Plaintiff appears to confuse two different topics: receiving priority review of the BLA and obtaining a PRV for a different drug product.  When asked at the conference if bluebird expected "priority review" of the lovo-cel BLA, Mr. Obenshain confirmed his expectation: "we do believe that we will get that priority review."  AC ¶ 48.  As the pleadings acknowledge, bluebird did receive priority review

- 15 -

for the lovo-cel BLA in June 2023.  AC ¶ 78 ("LYFGENIA was granted Priority Review in June 2023").  Moreover, Mr. Obenshain using "we believe" clearly indicated to reasonable investors that the statement was "unvarnished opinion," and "a sincere statement of pure opinion is not an 'untrue statement of material fact." *See Cody*, 199 F. Supp. 3d at 419.  There are no allegations that suggest Mr. Obenshain's opinion was not honestly held; in fact, the allegations suggest the opposite given that his opinion turned out to be correct.  Because this statement in fact had nothing to do with the request for a PRV as part of the lovo-cel BLA, and in any event was not at all misleading as to whether bluebird would or would not receive favorable agency action, it is not an actionable misstatement.

3.   ***Q2 2023 Earnings Call***

The first actual statement identified in the pleadings regarding the possible receipt of a PRV appears in bluebird's Q2 2023 Earnings Call on August 8, 2023.  The Amended Complaint excerpts from a transcript of the Q2 2023 Earnings Call in which bluebird was asked about the PRV: "[I]f you do get approved for sickle cell disease, will you receive the PRV? And if so, are you planning to monetize it?"  AC ¶ 50.  CFO Christopher Krawtschuk responded first by saying it was possible the FDA would grant the PRV, and then addressed the question of whether bluebird would "monetize" it.  As set out in the pleadings, he said:

> *It's possible we could receive a PRV* since lovo-cel BLA was accepted for priority review for patients 12 and over. However, as it relates to whether or not we'd monetize it, we of course, would look at the market, evaluate the opportunities in the market and then make a decision based upon what we see there. I don't want to comment today on whether or not -- we monetize it or not until we know whether or not we get a fair price for it. And just as a reminder, the PRV is not factored. Any potential PRV is not factored into our cash runway.

AC ¶ 50 (emphasis added).

The Amended Complaint offers no basis for the claim that Mr. Krawtschuk's statement *misled* investors into thinking that bluebird would certainly receive the PRV.  Nor are there any

particularized allegations whatsoever to suggest that Mr. Krawtschuk knew (or recklessly disregarded) specific facts that would have informed him, as of the time of this statement, that it was not "possible" that the FDA would grant the PRV.  Again, all that Plaintiff offers are conclusory and "fraud by hindsight" allegations that bluebird was never eligible for a PRV, which are insufficient to state a claim.  *See supra* at 15.

    4.    ***Q3 2023 Earnings Call***

During bluebird's Q3 2023 Earnings Call on November 7, 2023, Mr. Krawtschuk made reference to the Company's prior announcement "last week . . . that we've entered into an advanced agreement to sell a priority review voucher, *if granted*, for lovo-cel for sickle cell disease for $103 million."  AC ¶ 54 (emphasis added).  No reasonable investor would interpret this statement as a guarantee or assurance that bluebird would receive a PRV, given Mr. Krawtchuk's use of a plain qualifier—"if granted"—as well as his reference to "*potential* proceeds from the PRV sale."  *See City of Bristol Pension Fund v. Vertex Pharms. Inc.*, 12 F. Supp. 3d 225, 238 (D. Mass. 2014) (holding that no reasonable investor would find statements about market for drug, "if approved," to be guarantee or "meaningful prediction" that outcome would be realized).  According, Plaintiff pleads no actionable misstatement or omission.

    **C.**    **All of the Purported Misstatements are Forward-Looking and Not Actionable Pursuant to PSLRA's Safe Harbor.**

Furthermore, all of the disputed statements—regarding both the label and potential PRV—are forward-looking and accompanied by meaningful cautionary language, and therefore protected by the PSLRA's Safe Harbor.  15 U.S.C. § 78u-5.  Forward-looking statements, or those that "speak predictively of the future," *Leavitt*, 451 F. Supp. 3d at 182, are not actionable when "the statement itself is identified as forward-looking and is accompanied by 'meaningful cautionary statements identifying important factors that could cause actual results to differ materially from

those in the forward-looking statement.'" *Hill*, 638 F.3d at 54 (quoting 15 U.S.C. § 78u–5(c)(1)(A)(i)).

Here, the challenged statements regarding lovo-cel's potential label are classic forward-looking statements in which Mr. Obenshain communicates what he "think[s]" the FDA will focus on in deciding the label's contents and his belief that the label will include a disclosure on hematologic malignancy risk somewhere on the label (but he did not know where), because he spoke "predictively of the future." *Leavitt*, 451 F. Supp. 3d at 183.  Because Plaintiff makes no particularized allegations (nor can he) that this opinion was not honestly held, these statements are not actionable.  *See Pizzuto*, 2024 WL 1436025, at *9, 13 ("Opinions are only actionable under the securities laws if they are not honestly believed and lack a reasonable basis . . . . Statements of opinion are often prefaced by phrases like 'we think.'").  And in any event, bluebird's statements about the label on the Q2 and Q3 2023 Earnings Calls were accompanied by meaningful cautionary language about the FDA's possible decisions and limitations of the speaker's knowledge.  *See, e.g.*, Ex. C at 29-30 (3/29/23 10-K); *see also Leavitt*, 451 F. Supp. 3d at 186-87 (holding that statements about scope of drug label, including "the regulators need to weigh in" and "ultimately, of course, [the FDA] ha[s] to adjudicate on that," constituted cautionary statements "of the principal risk inherent in developing novel pharmaceutical drugs, i.e., that FDA approval was not guaranteed").

The challenged statements relating to bluebird's possible receipt of a PRV also fall squarely within PSLRA's Safe Harbor because they "anticipated a hoped-for future event." *Id.* at 186.  Even if Plaintiff alleged with particularity facts known by bluebird at the time each statement was made that would render it false (which he does not), the fact that Defendants' forward-looking statements were accompanied by meaningful cautionary language—such as *"if granted"*—makes

- 18 -

their state of mind irrelevant.  *See Harrington v. Tetraphase Pharms., Inc.*, 2017 WL 1946305, at *8-9 (D. Mass. May 9, 2017) (cautionary statements that "identify specific risk factors including the clinical trial results and the possibility of the FDA not approving the drug" "are sufficient to invoke the safe harbor"); *In re Biogen Inc. Sec. Litig.*, 193 F. Supp. 3d 5, 40 (D. Mass. 2016) (noting "[i]f we fail to successfully execute" as satisfactory cautionary language).

## II.     THE AMENDED COMPLAINT COMES NOWHERE CLOSE TO SATISFYING THE HEIGHTENED PLEADING REQUIREMENTS FOR SCIENTER.

The Amended Complaint should also be dismissed for the independent reason that Plaintiff fails to adequately allege that any Defendant intentionally or recklessly misled investors.  *ACA Fin. Guar. Corp.*, 512 F.3d at 65.  To satisfy PSLRA's stringent pleading requirements, Plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  *Kader*, 887 F.3d at 57 (quoting 15 U.S.C. § 78u–4(b)(2)(A)).  To plead scienter, Plaintiff must allege that each Defendant acted with either a "conscious[] inten[t] to defraud" or "a high degree of recklessness."  *Id.* at 57.  To demonstrate a high degree of recklessness, Plaintiff must show "a highly unreasonable omission" that involves "an extreme departure from the standards of ordinary care" and also "presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious the actor must have been aware of it."  *In re Smith & Wesson Holding Corp. Sec. Litig.*, 669 F.3d 68, 77 (1st Cir. 2012) (citation omitted).  Complaints satisfying this pleading standard "often contain[] clear allegations of admissions, internal records or witnessed discussions suggesting that . . . the defendant officers were aware that they were withholding vital information or at least were warned by others that this was so."  *In re Boston Sci. Corp. Sec. Litig.*, 686 F.3d 21, 31 (1st Cir. 2012).

Supreme Court precedent also requires that Plaintiff's theory of scienter be "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing

inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.  Where innocent inferences are more persuasive than Plaintiff's theory of the case, Plaintiff's allegations must be dismissed. *Brennan v. Zafgen, Inc.*, 199 F. Supp. 3d 444, 470-71 (D. Mass. 2016), *aff'd*, 853 F.3d 606 (1st Cir. 2017).[4]

### A.     The Amended Complaint Fails to Allege Any Facts to Demonstrate Defendants' Knowledge of Falsity at Any Time During the Class Period.

Crucially, the Amended Complaint contains no allegations—let alone allegations that would satisfy the heightened scienter pleading standard—that the Defendants, at the time they made a purportedly misleading statement, somehow knew or recklessly disregarded information that contradicted their public statements.  Even assuming (for purposes here) that Mr. Obenshain's statements during the May 11, 2023 B of A Conference or on the Q3 2023 Earnings Call, for example, could be read to amount to a statement that the FDA *would not* require a boxed warning, no allegation in the Amended Complaint identifies any particular fact establishing that Mr. Obenshain had knowledge (or recklessly ignored information he possessed) that the FDA would require such a warning at the time he made those statements.  Likewise, even if Mr. Krawtschuk's two alleged statements relating to the PRV, made in August 2023 and November 2023—both of which were qualified with clear language ("possible" and "if granted")—could be taken as

---

[4] Securities plaintiffs often point to so-called "confidential witnesses" in order to allege facts known to a defendant at a time when purported mistatements were made, in order to raise a stronger inference of scienter. *See City of Bristol*, 12 F. Supp. 3d at 232 n.5.  Here, none of the alleged facts attributed to the purported "Confidential Witnesses" provide any particularized allegations that would support a conclusion that the allegedly false or misleading statements concerning the label or the PRV were false at any time, let alone at the time they were made; indeed, none of the information attributed to the Confidential Witnesses has anything to do directly with the boxed warning or the possible receipt of the PRV.  *See* AC ¶ 29 (CW#1 allegations regarding bluebird's need for financing); AC ¶ 36 (CW#2 allegations regarding Defendants' knowledge regarding competitor product being developed at the same time); AC ¶ 62 (CW# allegations that "Blue experienced difficulties in trying to prove to the FDA that the drug worked and to show that the drug did not cause a more fatal disease than the underlying disease the patient already had").  Nor do they constitute secret information contrary to Defendants' public statements.  *See In re iRobot Corp. Sec. Litig.*, 527 F. Supp. 3d 124, 135-36 (D. Mass. 2021) (holding that confidential witnesses' statements did not support fraud allegations because they did not contradict publicly available information about the company).  In any event, as to all of the so-called Confidential Witnesses, there are no specific allegations that they interacted with senior management on any relevant issues during the relevant time period.  *See Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*, 778 F.3d 228, 245 (1st Cir. 2015) (indicating that limited contact between confidential witnesses and upper management cannot support an inference of scienter).

assurances that the PRV *would be* granted, the Amended Complaint contains no particularized allegations to suggest that Mr. Krawtschuk knew or should have known bluebird would not receive a PRV and nonetheless misled investors. Nor are there any allegations that Defendants withheld any material information from the market. These failures mean the Amended Complaint raises *no* inference of scienter on the part of Defendants with regard to statements on either topic, let alone raise the strong or cogent inference Plaintiff must raise to survive dismissal at the pleading stage.

The Amended Complaint seeks to substitute conclusory say-so in place of particularized facts. With regard to the boxed warning, Plaintiff alleges that, due to safety data revealing a risk of hematologic malignancies and "because gene therapy treatments are inherently dangerous," "Defendants knew or should have known that blood monitoring or some sort of black box warning would be mandated." AC ¶¶ 61, 65. But Plaintiff's "unsupported speculation" cannot replace well-pleaded facts. *Ganem*, 845 F.3d at 457. And, as the pleadings acknowledge, Mr. Obenshain's own statements disclosed bluebird's expectation that the risk of hematologic malignancy would appear *somewhere* in the label. AC ¶ 56; *see also* Ex. C at 30 (3/29/23 10-K) (warning that lovo-cel could receive a boxed warning). "Attempts to provide investors with warnings of risks generally weaken the inference of scienter." *Ezra Charitable Tr. v. Tyco Int'l Ltd.*, 466 F.3d 1, 8 (1st Cir. 2006).

With regard to the possible receipt of the PRV, Plaintiff alleges that because Lyfgenia was supposedly just "repackaged" Zynteglo with the same "active ingredient," Defendants had "no reason to believe" bluebird would receive the PRV. AC ¶¶ 71-77. But the fact that despite Zynteglo's prior approval from FDA, bluebird was required to submit an entirely separate BLA for lovo-cel, and then await a separate approval for that product from the FDA, itself belies any plausible inference that the two products were interchangeable, such that bluebird was barred from

requesting a PRV in the lovo-cel BLA. Nor was bluebird *required* to predict that its request would be denied. *See Brill v. Invivyd, Inc.*, 2024 WL 4228832, at \*11 (D. Mass. Sept. 18, 2024) (rejecting plaintiff's argument that defendants acted with requisite scienter for allegedly failing to disclose that drug could be ineffective). Plaintiff nowhere sets out particularized facts establishing that Mr. Krawtschuk knew or should have known that the FDA would, a month later, announce that it was not granting the PRV; instead, Plaintiff asks the Court to infer that he *must* have known. Courts have long held that conclusory allegations that executives "knew or must have known," like those present here, are not enough. *See In re Galileo Corp. S'holders Litig.*, 127 F. Supp. 2d 251, 261 (D. Mass. 2001) (holding that scienter is not "pleaded sufficiently by an allegation that a defendant must have had knowledge of the facts"). This is true even when Plaintiff includes vague and speculative allegations that Defendants must have known given the nature of their roles and access to corporate insider information. *See In re Fin. Oversight*, 54 F.4th at 55-56 (refusing to infer scienter from allegations based on the nature of defendants' roles as "too broad and speculative"); *In re Biogen*, 193 F. Supp. 3d at 51 (noting that absent a "smoking gun email" or similar "plus factor," courts refuse to infer scienter from the broad assertions that senior executives must have known about certain facts). These allegations raise no plausible inference that the Defendants acted with fraudulent intent or reckless disregard, let alone a sufficiently strong inference to survive the rigorous pleading standard established in *Tellabs* and related decisions.

**B.     The Only Theory Advanced As To A Possible Motive to Defraud Investors Fails As A Matter of Law.**

Plaintiff's "motive" allegations do not salvage his claims. "Sufficient motive allegations entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged." *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001) (internal quotation marks and citation omitted). The Amended Complaint contains no allegation that any Defendant

- 22 -

personally benefited from any of the purported wrongdoing. Instead, Plaintiff alleges that Defendants made the false statements and overstated lovo-cel's prospects "[i]n order to raise much needed funds" in light of "cash flow problems and problematic revenue issues." AC ¶¶ 30, 33-35. Courts in this Circuit have repeatedly and consistently rejected identical allegations as insufficient to infer scienter. "[T]he usual concern by executives to improve financial results' does not support an inference of scienter," including allegations that "'the very survival of the company w[as] on the line." *Corban v. Sarepta Therapeutics, Inc.*, 868 F.3d 31, 41 (1st Cir. 2017) (citation omitted) (rejecting same). Plaintiff has pled nothing more here. The Amended Complaint thus advances no viable motive to defraud, which weighs heavily in favor of an inference of nonculpable intent.

### C.      Inferences of Nonculpable Intent Outweigh Plaintiff's Implausible Theory.

After weighing all competing inferences rationally drawn from the facts alleged, as *Tellabs* requires, the comparative analysis is not a close one. The obvious nonculpable inference—that bluebird and its executives responded to inquiries with the best information they had available at the time—is far more cogent and compelling than any opposing inference of fraud. *Tellabs*, 551 U.S. at 315. With respect to the PRV, it is far more plausible that Defendants communicated what they understood at the time about their pending request for the PRV—that it was "possible" the PRV would be granted. *See, e.g.*, AC ¶ 50 ("it's possible we could receive a PRV"); AC ¶ 54 ("we've entered into an advanced agreement to sell a priority review voucher, if granted"). Indeed, the fact that bluebird entered into a material agreement with a third party, announced on October 30, 2023, to *sell* a PRV, if one were granted as part of the lovo-cel BLA, strongly supports an inference that bluebird remained of the view that it might receive the PRV and, certainly, was not in possession of information informing it that the FDA would not grant the PRV. There is no basis to infer that the buyer would have entered into an agreement to purchase a PRV there was no

likelihood of being granted.  No particularized facts in the Amended Complaint come anywhere close to suggesting otherwise.

Similarly, with respect to the label, the most plausible inference is that bluebird knew the risk would be disclosed somewhere on the label and told investors that.  *See Kader*, 887 F.3d at 58 ("[P]roviding warnings to investors, or otherwise disclosing potential risks, erodes inferences of scienter.").  No allegations raise any meaningful inference that bluebird knew, at the time any challenged statement was made, that the FDA would require in its December 8, 2023 decision that the disclosure on the label take the form of a boxed warning.[5]

Weighing in the balance "plausible, nonculpable explanations for the defendant's conduct" against only meager, conclusory allegations that Defendants "must have known" the statements purportedly were misleading, *Tellabs*, 551 U.S. at 324, this Court should conclude that the Amended Complaint falls well short of pleading a strong, cogent inference of scienter.  At bottom, Plaintiff's allegations simply amount to asserting "the fact that something turned out badly must mean defendant knew earlier that it would turn out badly," which is the inactionable "classic fraud by hindsight case." *Miss. Pub. Emps. Ret. Sys. v. Bos. Sci. Corp.*, 523 F.3d 75, 91 (1st Cir. 2008).

---

[5] The Amended Complaint also points to a statement by Mr. Colvin on December 8, 2023, indicating that "[t]he potential for a box warning was something we anticipated and it was built into our commercial projections;" Plaintiff insists this "[was] in direct contrast to statements made in [bluebird's] November 7, 2023 earnings call."  AC ¶¶ 81-82.  But the question Mr. Obenshain was asked on November 7 did not address whether a boxed warning would be required by the FDA, and the response attributed to Mr. Obenshain from the November 7 earnings call *acknowledges* that the risk of hematologic malignancy will be present somewhere on the label.  It is clear from Mr. Obenshain's November 7 statement that bluebird anticipated the FDA will require that risk to be disclosed on the product's eventual label.  Moreover, the Amended Complaint itself acknowledges that the potential for the FDA to require a boxed warning for gene therapies is well known by the public.  *See* AC ¶ 61 ("Almost every gene therapy approved by the FDA has come with a black box warning because gene therapy treatments are inherently dangerous.").  Against this backdrop, nothing in the November 7 exchange can be read as an effort to mislead investors into believing no boxed warning would be required.  And no particularized allegation raises any inference that Mr. Obenshain knew that a boxed warning would be required before the FDA eventually announced its decision.

### III.    PLAINTIFF'S CONTROL PERSON CLAIMS MUST BE DISMISSED.

Section 20(a) of the Exchange Act holds persons jointly and severally liable for their respective controlled entities' securities law violations.  15 U.S.C. § 78t(a).  Thus, allegations under Section 20(a) are "derivative of [] claim[s] alleging an underlying securities law violation." *Mehta v. Ocular Therapeutix, Inc.*, 955 F.3d 194, 211 (1st Cir. 2020).  Because the Amended Complaint fails to allege a primary violation of Section 10(b) of the Securities Exchange Act, the Section 20(a) claim for control person liability must also be dismissed.  *See Abiomed, Inc.*, 778 F.3d at 246.  As the Section 20(a) claim must be dismissed, Plaintiff too cannot hold Defendants liable under a respondeat superior theory.  *See In re Lernout & Hauspie Secs. Litig.*, 286 B.R. 33, 44 (D. Mass. 2002).

### CONCLUSION

For the reasons stated above, the Amended Complaint should be dismissed in its entirety, with prejudice.

Dated: October 11, 2024                                **ROPES & GRAY LLP**

                                                                        */s/ Robert Jones*
                                                                        Robert Jones (BBO No. 630767)
                                                                        Monica Mleczko (BBO No. 696607)
                                                                        Ropes & Gray LLP
                                                                        Prudential Tower
                                                                        800 Boylston Street
                                                                        Boston, MA 02199
                                                                        (617) 951-7000
                                                                        robert.jones@ropesgray.com
                                                                        monica.mleczko@ropesgray.com

                                                                        *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I, Monica Mleczko, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on October 11, 2024.

/s/ *Monica Mleczko*
Monica Mleczko

- 26 -