UNITED STATES DISTRUCT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GARY GILL, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | Civil Action No. 1:24-cv-10803 |
| v. | ) ) | **Oral Argument Requested** |
| BLUEBIRD BIO, INC., ANDREW OBENSHAIN, CHRISTOPHER KRAWTSCHUK, and RICHARD A. COLVIN, | ) ) ) ) ) | |
| Defendants | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................ 1

II.   STATEMENT OF FACTS ......................................................................................... 1

III.  LEGAL STANDARD ................................................................................................ 8

IV.   ARGUMENT AND AUTHORITY ........................................................................... 8

   A.   Plaintiff Sufficiently Alleges Actionable Misstatements and Omissions........................... 9

      1.   False and Misleading Statements and Omissions Regarding Priority Review Voucher . 9

      2.   False and Misleading Statements and Omissions Regarding the Box Warnings...........11

      3.   Defendants are Not Entitled to the PSLRA's Safe Harbor provision........................... 13

   B.   Plaintiff Sufficiently Pleads Scienter. ................................................................. 14

      1.   Defendants Knew Their Statements and Omissions Were False and Misleading. ....... 15

      2.   There is a Strong Inference that Defendants Intended to Defraud Investors................ 17

   C.   Plaintiff Sufficiently Alleges Claims Against Control Persons. ...................................... 19

   D.   Alternatively, this Court Must Grant Plaintiff Leave to Amend. ...................................... 19

V.    CONCLUSION............................................................................................................ 19

**TABLE OF AUTHORITIES**

*CASES*

*ACA Financial Guaranty Corp. v. Advest, Inc.*

    512 F.3d 46 (1st Cir. 2008) ...........................................................................................14

*Aldridge v. A.T. Cross Corp.*

    284 F.3d 72 (1st Cir. 2002) .................................................................................14, 18–19

*Basic Inc. v. Levinson*

    485 U.S. 224 (1988)...........................................................................................................9

*Brennan* v. *Zafgen, Inc.*

    853 F.3d 606 (1st Cir. 2017) .........................................................................................15

*Brumbaugh v. Wave Systems Corp.*

    416 F. Supp. 2d 239 (D. Mass. 2006) .............................................................................12

*Construction Industry and Laborers Joint Pension Trust v. Carbonite, Inc.*

    22 F.4th 1 (1st Cir. 2021) ...............................................................................................16

*Cooperman v. Individual, Inc.*

    171 F.3d 43 (1st Cir. 1999) .............................................................................................8

*Gross v. Summa Four, Inc.*

    93 F.3d 987 (1st Cir. 1996) .............................................................................................8

*Ernst & Ernst v. Hochfelder*

    425 U.S. 185 (1976)........................................................................................................14

*Fidel v. Farley*

    392 F.3d 220 (6th Cir. 2004)..........................................................................................17

*Fire & Police Pension Ass'n v. Simon*

778 F.3d 228 (1st Cir. 2015) ..................................................................................9

*Fitzer v. Sec. Dynamics Tech., Inc.*

119 F. Supp. 2d 12 (D. Mass. 2000)........................................................................8

*Hill v. Gozani*

638 F.3d 40 (1st Cir. 2011)....................................................................................11

*In re Allaire Corporation Securities Litigation*

224 F. Supp. 2d 319 (D. Mass. 2002) .......................................................10, 14–15

*In re Ariad Pharms., Inc. Sec. Litig.*

842 F.3d 744 (1st Cir. 2016) .................................................................................12

*In re Boston Tech., Inc. Sec. Litig.*

8 F. Supp. 2d 43 (D. Mass. 1998) ......................................................................9–11

*In re Cabletron Sys., Inc.*

311 F.3d 11 (1st Cir. 2002)....................................................................................15

*In re Cytyc Corp.*

No. 1:02-cv-12399-NMG, 2005 WL 3801468 (D. Mass. Mar. 2, 2005).....................10–11

*In re Karyopharm Therapeutics Inc. Sec. Litig.*

552 F. Supp. 3d 77 (D. Mass. 2021) ......................................................................12

*In re Scholastic Corp. Sec. Litig.*

252 F.3d 63 (2d Cir. 2001) ....................................................................................19

*In re Smith & Wesson Holding Corp. Sec. Litig.*

604 F. Supp. 2d 332 (D. Mass. 2009) ....................................................................13

*In re Stone & Webster, Inc., Sec. Litig.*

    414 F.3d 187 (5th Cir. 2005) ........................................................................13

*Lucia v. Prospect St. High Income Portfolio, Inc.*

    36 F.3d 170 (1st Cir. 1994) ..........................................................................9

*Matrixx Initiatives, Inc. v. Siracusano*,

    563 U.S. 27, 44 (2011) ..................................................................................9

*Mehta* v. *Ocular Therapeutix, Inc.*

    955 F.3d 194 (1st Cir. 2020) ......................................................................15

*Miss. Pub. Emps.' Ret. Sys. v. Boston Sci. Corp.*

    523 F.3d 75 (1st Cir. 2008) ............................................................12, 15, 18

*Nathenson v. Zonagen Inc.*

    267 F.3d 400 (5th Cir. 2001) ......................................................................19

*Omnicare, Inc.* v. *Laborers Dist. Council Constr. Indus. Pension Fund*

    575 U.S. 175 (2015) ....................................................................................16

*Shaw v. Digital Equip. Corp.*

    82 F.3d 1194 (1st Cir. 1996) ........................................................................8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*

    551 U.S. 308 (2007) ....................................................................................17

### STATUTES

15 U.S.C. § 78u-4 ...............................................................................................9

15 U.S.C. § 78u–5 .............................................................................................13

15 U.S.C. § 78t ..................................................................................................19

Federal Rule of Civil Procedure 9 ......................................................................8

Federal Rule of Civil Procedure 15 .................................................................................................19

*OTHER AUTHORITY*

Hoffman, Matt, *FDA Experts Weigh In on Exa-cel and Lovo-cel Approvals for Sickle*

*Cell and Corresponding Black Box Safety Warnings*, CGTlive (Dec. 8, 2023)

https://www.cgtlive.com/view/fda-experts-exa-cel-lovo-cel-approvals-sickle-

cell-disease-safety-warning..............................................................................................5

## I.    INTRODUCTION

Plaintiff Larry Cattran ("Plaintiff") filed his Amended Class Action Complaint on August 15, 2024, asserting claims under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder and Section 20(a) of the Exchange Act. [Doc. 26]. Plaintiff brings Section 10(b) and Rule 10b-5 claims against bluebird bio, Inc. ("bluebird" or the "Company"), bluebird's President and Chief Executive Officer ("CEO") Andrew Obenshain, bluebird's Chief Financial Officer ("CFO") Christopher Krawtschuk, and bluebird's Chief Medical Officer ("CMO") Richard A. Colvin (Defendants Obenshain, Krawtschuk, and Colvin collectively referred to as "Individual Defendants") (bluebird, with the Individual Defendants collectively referred to as "Defendants") for their false and misleading statements and omissions and acquiescence of such statements and omissions which lead investors to purchase bluebird's stock at inflated prices. Plaintiff's Section 20(a) claims are asserted against the Individual Defendants in their capacity as control persons. On October 11, 2024, Defendants filed their Motion to Dismiss alleging that Plaintiff failed to state actionable misstatements or omissions and that Plaintiff failed to satisfy the heightened pleading standards for scienter. [Doc. 33]. As set forth below, Defendants' Motion to Dismiss must be denied in its entirety.

## II.    STATEMENT OF FACTS

On April 24, 2023, Defendants announced submission of its Biologics License Application ("BLA") to the U.S. Food and Drug Administration ("FDA") for its Lyfgenia ("lovo-cel") gene therapy for patients with sickle cell disease ("SCD") ages 12 and older who have a history of vaso-occlusive events ("VOEs"). [Doc. 26, ¶ 3]. The BLA also included an application for a priority review voucher ("PRV") – an extremely valuable voucher that can be used to shorten the review process for a future drug application. *Id.* at ¶ 4. PRVs are highly sought after as they can increase

1

the profitability of a future drug by decreasing the drug's review period or they can be sold to another company for a profit. *Id.*

Bluebird is a biotechnology company that researches, develops, and commercializes gene therapies for severe genetic diseases, including Zynteglo for the treatment of transfusion-dependent ß-thalassemia. *Id.* at ¶ 27. Prior to and during the release of lovo-cel, bluebird was experiencing cash flow issues and was in desperate need of a cash infusion to make it through 2024. *Id.* at ¶¶ 28–29. Due to administration restraints, bluebird's drug, Zynteglo, could only be used to treat one patient per week – offering limited revenue potential. *Id.* at ¶ 32. Moreover, bluebird's competitor, Vertex, was developing a new drug to treat sickle cell disease. *Id.* at ¶ 36. To increase revenue and maintain its market space, bluebird repackaged stale technology from its drug Zynteglo into a "new" drug called lovo-cel to treat sickle cell disease. *Id.* at ¶¶ 33–34.

Defendants intentionally promoted lovo-cel as a "new" gene therapy with minimal safety concerns given the nature of the product. *Id.* at ¶¶ 45, 48, 50, 52, 54, 56, 78. But lovo-cel was not a "new" drug and was well associated with significant risks, including leukemia. *Id.* at ¶¶ 41, 63. Through their false and misleading statements and omissions, Defendants intentionally created a false impression that (1) lovo-cel was a new drug that qualified for a PRV, and (2) lovo-cel was not reasonably associated with serious illnesses, such as leukemia. *Id.* at ¶ 58.

**<u>PRV</u>**

Defendants made false allegations as to the possibility of receiving a PRV. During the second quarter earnings call on August 8, 2023, Defendant Christopher Krawtschuk stated that "it's **possible** [bluebird] could receive a PRV since lovo-cel BLA was accepted for priority review for patients 12 and over." *Id.* at ¶ 50 (emphasis added). On November 7, 2023, during bluebird's third quarter 2023 earnings call, Defendant Krawtschuck stated that bluebird entered into an

advanced agreement to sell a priority review voucher for $103 million if the lovo-cel application is granted one. *Id.* at ¶ 54. Specifically, Defendant Krawtschuk stated:

> We remain on track with our full-year 2023 cash burn guidance in the range of $270 million to $300 million and continue to prudently deploy capital to bring our therapies to our patients. Additionally, last week, we announced that we've entered into an advanced agreement to sell a priority review voucher, if granted, for lovo-cel for sickle cell disease for $103 million. This would be an important source of non-dilutive capital and has the potential to strengthen our financial position ahead of the anticipated launch of lovo-cel.

> As of September 30, we had $227 million in cash, cash equivalents, restricted cash, and marketable securities, not including the potential proceeds from the PRV sale or the release of our $53 million in restricted cash, we have a cash runway into Q2 of next year. We plan to provide an updated cash runway guidance by early 2024 and continue to explore additional financing opportunities to further extend our cash runway.

*Id.*

To qualify for a PRV, the FDA requires that the biological product be classified as a human drug (1) for prevention or treatment of a rare pediatric disease (2) that contains no active ingredient that has been previously approved under the Federal Food, Drug, and Cosmetic Act or the Public Health Services Act. *See id.* at ¶ 73. In filling out and filing the PRV application, and at all times during the class period, Defendants knew that lovo-cel did not meet these requirements. *Id.* at ¶¶ 71–72, 75–76. *See also id.* at ¶¶ 19–21, 51, 55.[1]

Contrary to their statements informing the public that lovo-cel could qualify for a PRV, lovo-cel failed to meet the basic requirements for a PRV application because it contained an active ingredient that has already been previously approved on August 17, 2022 in bluebird's drug Zynteglo. *Id.* In denying bluebird's PRV request, the FDA stated:

> Your request for a rare pediatric disease priority review voucher has been denied. Although your biological product has a rare pediatric disease designation, you did

---

[1] As the President, CEO, CFO, and CMO of bluebird, the Individual Defendants are charged with knowledge of lovo-cel's ingredients, the ingredients and FDA approval of bluebird's other drugs, and the FDA's basic PRV requirements. *Id.* at ¶¶ 19–21.

not qualify for the voucher because your application did not meet the requirements to be a "rare pediatric disease product application" under section 529(a)(4) of the Federal Food, Drug & Cosmetic Act (FD&C Act) for the following reason:

FDA has determined that BLA 125788 is not a human drug application for a biological product that contains no active ingredient that has been previously approved in any other application under section 351(a) or 351(k) of the PHS Act. Specifically, BLA 125788 is for a biological product that contains an active ingredient that was previously approved in another application under section 351(a) of the PHS Act. The active ingredient was previously approved, on August 17, 2022, in BLA 125717 for Zynteglo (betibeglogene autotemcel)

*Id* at ¶ 84.

Defendants had no "possibility" of ever receiving a PRV with lovo-cel because lovo-cel failed to meet the minimal requirements for a PHV application. Yet, Defendants intentionally and knowingly misrepresented to the public that lovo-cel qualified for a PRV. Because Defendants had no factual basis for their assertion, Defendants clearly intended to defraud or otherwise mislead investors.

**<u>Black Box Warning Label</u>**

On December 8, 2023 – after the FDA publicly announced that lovo-cel would include a black box warning for hematologic malignancy (*i.e.*, blood cancers) and 15-year monitoring period – Defendant Colvin stated during bluebird's same-day earnings call that the Defendants had always "anticipated" the potential for a box warning for lovo-cel. *Id.* at ¶ 81. Despite their claims that they "anticipated" a boxed warning, Defendants intentionally and knowingly misrepresented to the public lovo-cel's relationship with hematologic malignancies and bluebird's ability to prove to the FDA that lovo-cel was not reasonably associated with blood cancers.

During lovo-cel's clinical trials, two patients passed away after developing leukemia and another passed away from sudden cardiac arrest. *Id.* at ¶ 63. After discovering lovo-cel's risk of hematologic malignancies, bluebird adjusted love-cel's transplant procedure and continued with the clinical trials. *Id.* at ¶ 56. But changing lovo-cel's procedure was not enough. *Id.* at ¶ 78. Given

4

their knowledge from the clinic trials and at all times during the class period, Defendants knew that lovo-cel would be reasonably associated with hematologic malignancies – a risk that would certainly warrant a boxed warning. *Id.* at ¶¶ 65–66, 78.

Throughout lovo-cel's BLA application, Defendants experienced difficulties in trying to prove to the FDA that the lovo-cel worked and did not cause leukemia. *Id.* at ¶ 62. Defendants clearly lacked sufficient evidence to establish the alleged lack of causation. *Id.* at ¶ 78. According to the FDA, the association between lovo-cel and hematologic malignancies was certain enough to require a boxed warning on lovo-cel's label.[2] *Id.*

Defendants led the public to believe that bluebird had sufficient evidence to show that lovo-cel was not reasonably related to hematologic malignancies. Defendants repeatedly informed the public that the leukemia cases were caused by the lovo-cel transplant procedure, and not the drug itself. *Id.* at ¶ 56. During bluebird's third quarter 2023 earnings call, Defendant Obenshain specifically stated that Defendants "are confident in the robustness and maturity of [their] BLA package and the review process." *Id.* Defendants further attempted to reassure the public that the deaths were of little consequence by representing that the two clinical-trial deaths were "not in [the] efficacy data set" provided to the FDA. *Id.*

Specifically, during the earnings call, an Analyst from RBC Capital Markets Research Division asked Defendants:

> Any update on the 2 patients that develop AML in the trial for sickle cell disease? Wondering if you could comment on how they're doing today and maybe bigger picture, whether there is a scenario where you get a label that includes risk of secondary malignancies while your competitor does not?

---

[2] *See also* Hoffman, Matt, *FDA Experts Weigh In on Exa-cel and Lovo-cel Approvals for Sickle Cell and Corresponding Black Box Safety Warnings*, CGTlive (Dec. 8, 2023) https://www.cgtlive.com/view/fda-experts-exa-cel-lovo-cel-approvals-sickle-cell-disease-safety-warnings (FDA expert explaining that bluebird lacked definitive evidence to show that the risk of hematologic malignancies was only associated with the transplant procedure.).

*Id.* Defendant Obenshain responded:

> However, there have been cases of cancer related to the transplant procedure involving lovo-cel. And unfortunately, 2 of those patients in our early clinical trials where we -- our procedures were in the earlier phase of Generation 1 procedure since the Group A did develop leukemia and AML, and those 2 patients did pass away. So although they are not -- those 2 patients are not in our efficacy data set, **it is likely that we will have a mention of that in the safety events in the label. In what part of the label or where is yet to be determined, but certainly, they will be in there. That's something that we've known for quite a while.**
>
> **Again, I think the really important point is there are no cases of insertional oncogenesis.[3] And so these are cases that were related to the procedure.**

*Id.* (Emphasis redacted). Defendants' representations intentionally side-stepped the severity of the two clinical-trial deaths and their connection to lovo-cel and classified the deaths as mere "safety events" rather than actual risks associated with lovo-cel. *Id.* Most importantly, not only did Defendant's statements omit any reference, warning, or suggestion that lovo-cel could be subject to a black box label, the statements falsely assured the public that lovo-cel did not carry with it risks of leukemia and that bluebird had sufficient evidence to prove it. *Id.* at ¶ 48.

Safety events on a label are not nearly as prominent and do not have the same adverse financial consequences as a box warning. *Id.* at ¶ 69. Medications with boxed warnings associated with them may have adverse financial consequences as these warnings can affect the marketability of the drug and generate negative news reports. *Id.*

Throughout the class period, Defendants repeatedly failed to adequately inform the public as to the effect of the two clinic-trial deaths on lovo-cel's label and marketability. On May 11, 2023, during the Bank of America Annual Healthcare Conference, Defendant Obenshain was questioned regarding lovo-cel's potential label. *Id.* at ¶ 48. Specifically, the Managing Director of

---

[3] Insertional oncogenesis indicates that the leukemia was caused by the drug itself, rather than the transplantation procedure.

Bank of America's Securities Research Division asked if there were "[a]ny specific elements of the label" that Obenshain felt were important as to lovo-cel's potential market space. *Id.* Defendant Obenshain, at the direction and approval of the other Individual Defendants, intentionally omitted statements regarding the potential for a black box warning, but rather stated that there is not "one particular area that the FDA would focus on overall." *Id.*

At all times during the Bank of America Annual Healthcare Conference and bluebird's third quarter 2023 earnings call, Defendants knew that lovo-cel involved a significant risk of cancer and/or death. *Id.* at ¶¶ 39, 63–65. Despite this, Defendants presented the clinical deaths as issues with lovo-cel's prior transplant procedure – which would only warrant a disclosure of safety events on the label – and reassured the public that bluebird had sufficient evidence to show that lovo-cel itself was not associated with hematologic malignancies. *Id.* at ¶ 56.

Defendants argue that they adequately warned the public of the possibility of "boxed" warning in other documents – each spanning over 140 pages and each containing hundreds of other general disclaimers and warnings. [Doc. 33, p. 9–10].[4] Even with the aid of Defendants' citations, the reader must hunt to find these small, generic disclosure statements amongst the see of other general disclaimers and warnings. Moreover, these general and boilerplate warnings do not provide the same level of seriousness and sincerity as Defendants' multiple reassurance that the deaths were related to the old transplant procedure and that there were "no cases of insertional oncogenesis." *Id.* at ¶ 56. In repeatedly assuring the public that the drug itself did not have associated risks of leukemia and claiming that the deaths may only result in a safety event on the

---

[4] The page numbers referenced herein refer to the ECF page numbers located on the top of the page.

label – given lovo-cel's new transplant procedure – Defendants intentionally buried any box label concerns.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 9(b) provides that "[i]n all averments of fraud . . . , the circumstances constituting the fraud . . . shall be stated with particularity." Thus, "the complaint must set forth specific facts that make it reasonable to believe that the defendant knew a statement was materially false or misleading. The rule requires that the particular times, dates, places, or other details of the alleged fraudulent involvement of the actors be alleged." *Gross v. Summa Four, Inc.*, 93 F.3d 987, 991 (1st Cir. 1996).

As this Court has put it: "To survive a motion to dismiss, a complaint alleging fraud must specify: (1) the statements that the plaintiff contends were fraudulent; (2) the identity of the speaker; (3) where and when the statements were made; (4) why the statements were fraudulent." *Fitzer v. Sec. Dynamics Tech., Inc.*, 119 F. Supp. 2d 12, 18 (D. Mass. 2000).

In considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded allegations in the nonmovant's complaint and must draw all inferences in favor of the nonmovant. *Cooperman v. Individual, Inc.,* 171 F.3d 43, 46 (1st Cir. 1999). Dismissal "is only appropriate if the complaint, so viewed, presents no set of facts justifying recovery." *Id.*

## IV.    ARGUMENT AND AUTHORITY

To state a claim under Rule 10b–5, "a plaintiff must allege that: (1) in connection with the purchase or sale of securities, (2) the defendant made a false statement or omitted a material fact, (3) with the requisite scienter, and that (4) plaintiff relied on the statement or omission, (5) with resultant injury." *In re Boston Tech., Inc. Sec. Litig.*, 8 F. Supp. 2d 43, 52 (D. Mass. 1998) (Lasker, J.) (citing *Gross*, 93 F.3d at 992, and *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1216–17 (1st Cir. 1996)).

8

**A. Plaintiff Sufficiently Alleges Actionable Misstatements and Omissions.**

To plead falsity under the PSLRA, a plaintiff must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). A fact or omission is material where "there is 'a substantial likelihood' that a reasonable investor would have viewed it as 'significantly alter[ing] the total mix of information made available.'" *Fire & Police Pension Ass'n v. Simon*, 778 F.3d 228, 240 (1st Cir. 2015) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988)). In other words, the plaintiff must show that the defendant made "an untrue statement of a material fact," 15 U.S.C. § 78u–4(b)(1)(A), or "omitted to state a material fact necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading," *id.* § 78u–4(b)(1)(B). While a company need not reveal every piece of information, it does have an affirmative duty to disclose information necessary to prevent affirmative statements from being "so incomplete as to mislead." *In re Bos. Sci. Corp. Sec. Litig.*, 686 F.3d at 27 (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011)).

Each statement must be considered in "[t]he immediate context of each statement—namely, the balance of what was said on the particular occasion, and the immediate circumstances in which the particular statement was made." *In re Boston Tech., Inc. Sec. Litig.*, 8 F. Supp. 2d at 55. A "literally accurate" statement can still, in context, be misleading if, when put in a larger context are equivalent to "material misrepresentation[s] by half-truth and incompleteness." *Lucia v. Prospect St. High Income Portfolio, Inc.*, 36 F.3d 170, 175 (1st Cir. 1994); *Backman*, 910 F.2d at 16.

      **1. False and Misleading Statements and Omissions Regarding the Potential for a Priority Review Voucher**

When Defendants submitted the BLA for lovo-cel and applied for a PRV, Defendants knew that lovo-cel contained the same active ingredient found in bluebird's other drug, Zynteglo, which

9

had already been previously approved by the FDA. [Doc. 26, ¶¶ 33–34, 41–42, 71–75, 77, 84]. The public, on the other hand, was not privy to this information. *Id.* at ¶¶ 90–91. A brief review of the FDA rules and guidelines makes clear that lovo-cel could not qualify for a PRV. *Id.* at ¶ 71–73, 84. Despite this, Defendants falsely stated that it was "possible" that they may be granted a PRV for lovo-cel. *Id.* at ¶ 50. Defendants further asserted that – given the alleged possibility of receiving a PRV – they had negotiated to sell the PRV for $103 million, increasing their future cash runway. *Id.* at ¶ 54.

Courts must consider expressions of corporate optimism very carefully. *In re Boston Tech., Inc. Sec. Litig.*, 8 F. Supp. 2d at 55. To constitute non-actionable puffery, the statement must be (1) so vague, so general, or so loosely optimistic that a reasonable investor would find it unimportant to the total mix of information, and (2) considered unimportant to the total mix of information in the market as a whole. *Id.* "The more specific, definite or concrete the outward statement is . . . the greater the likelihood the statement is material and not mere puffery." *In re Cytyc Corp.*, No. 1:02-cv-12399-NMG, 2005 WL 3801468, at *20 (D. Mass. Mar. 2, 2005).

Defendants' statements regarding the "possibility" that bluebird would receive a PRV were not mere opinions but precise statement that bluebird's lovo-cel application met the basic requirements to be considered for a PRV. *Id.* ¶¶ 72–73; *In re Allaire Corp. Sec. Litig.,* 224 F. Supp. 2d 319, 331–32 (D. Mass. 2002) (the defendants' precise statement that a new product was "fueling growth" was actionable and not mere puffery). Given lovo-cel's failure to merely qualify for a PRV, Defendants knew that it was *never* "possible" bluebird would receive a PRV with lovo-cel nor the "potential proceeds" therewith. [Doc. 26, ¶ 84]. Rather, Defendants made an affirmatively false statement as to the present possibility that bluebird could receive a PRV. *Id.* at ¶ 41–42, 50,

90. Defendants statements mislead investors to believe that bluebird had developed new technology that could open a pathway for significant future revenue. *Id.*

Defendants' assertions were critical to the public's understanding of bluebird's research and new technology and its ability to continue to generate cash flow in the future. That a company's product qualifies for a PRV informs the public that the company has developed an almost entirely new drug with new science and technology and active ingredients. *Id.* at ¶ 4, 73. Moreover, PRVs are extremely valuable and can significantly impact the profitability of a company. *Id.* at ¶ 4. Defendants' false assertions of "possibility" that it could receive a PRV mislead investors to believe that bluebird had developed new technology and had the ability to obtain a lucrative asset. *Id.* at ¶¶ 86, 90–91; *In re Cytyc Corp.*, 2005 WL 3801468, at *20. Defendants' further statements regarding their intent and agreement to sell the PRV bolstered the significance of the Defendants' guarantee that the lovo-cel application qualified for a PRV. [Doc. 26, ¶ 54]. Defendants' false statements impacted investors' insight into the company and mislead investors to purchase bluebird's stock at inflated prices.

### 2. False and Misleading Statements and Omissions Regarding the Box Warnings

Courts have held that a statement of risk "does not insulate the speaker from liability, particularly where it is 'generic and formulaic.'" *Hill v. Gozani*, 638 F.3d 40, 60 (1st Cir. 2011). Rather, the cautionary language must be "sufficiently related to the subject matter and strong in tone to counter the statement made." *In re Boston Tech., Inc. Sec. Litig.*, 8 F. Supp. at 53.

Defendants repeatedly assured the public that the two clinical-trial deaths were caused solely by the procedure used to transplant lovo-cel and not the drug itself as there were "no cases of insertional oncogenesis." [Doc. 26, ¶ 56]. At the time of these statements, bluebird had already changed lovo-cel's transplant procedure, run trials with the new procedure, and submitted the lovo-

11

cel BLA application with information and direction to use the new procedure. *Id.* at ¶ 78. Defendants' statements were intentionally "skewed to present a rosy picture." *In re Karyopharm Therapeutics Inc. Sec. Litig.*, 552 F. Supp. 3d 77, 88 (D. Mass. 2021). Knowledge that bluebird failed to muster up sufficient evidence to show that lovo-cel was not reasonably associated with leukemia and the clinical-deaths could justify a box warning would have "altered the total mix of information available to investors." *Id.*

Defendants' boilerplate and generic warnings of the potential for a boxed warning were not sufficient to counteract their assurances that the risks of leukemia with lovo-cel were *in the past*. *Miss. Pub. Emps.' Ret. Sys. v. Boston Sci. Corp.*, 523 F.3d 75, 91 (1st Cir. 2008) (finding that the company's failure to disclose new or updated information directly contradicted the statements the company had made assuring investors that the problems were benign or in the past); *In re Ariad Pharms., Inc. Sec. Litig.*, 842 F.3d 744, 753 (1st Cir. 2016) (same). After changing lovo-cel's transplanted procedure and engaging in additional clinical trials with the new procedure, Defendants represented to the public that the two clinical-trial deaths would only warrant a "safety event" warning somewhere on lovo-cel's label – a warning that does not carry with it the same financial consequence and market limitations as a boxed warning. *Id.* at ¶¶ 68–69, 88. Bluebird's general statements that address the possibility of a boxed warning – buried deep within 140+ documents amongst other boilerplate disclosures – were not sufficiently specific nor delivered with the same tone and level of caution as Defendants repeat assurances as to lovo-cel's safety. As such, Defendants' general and boilerplate warnings did not sufficiently counter their decision to downplay the potential effect of the deaths on lovo-cel's label. *Brumbaugh v. Wave Systems Corp.*, 416 F. Supp. 2d 239, 252 (D. Mass. 2006) (noting how the "surrounding context" failed to caution "against such an implication with sufficient clarity to be thought to bespeak caution").

12

### 3.    Defendants are Not Entitled to the PSLRA's Safe Harbor provision.

A defendant's statement is protected only if it falls within the PSLRA's Safe Harbor provision, 15 U.S.C. § 78u–5(c)(1), as a forward-looking statement that (1) is identified as forward looking and is accompanied by meaningful and appropriate cautionary language regarding risks and the possibility that results will differ from projections; (2) is immaterial; or (3) the executives of the company had no actual knowledge was false or misleading." *In re Smith & Wesson Holding Corp. Sec. Litig.*, 604 F. Supp. 2d 332, 340 (D. Mass. 2009). "[T]o be meaningful, cautionary statements must be 'substantive and tailored to the specific future projections, estimates or opinions . . . which plaintiffs challenge.'" *Isham v. Perini Corp.*, 665 F. Supp. 2d 28, 39 (D. Mass. 2009) (quoting *In re Smith & Wesson Holding Corp. Sec. Litig.*, 604 F. Supp. 2d at 340).

The PSLRA defines "forward-looking" statements as: "(A) a statement containing a projection of revenues, income ... earnings (including earnings loss) per share, . . . capital expenditures, dividends, . . . or other financial items; (B) a statement of the plans and objectives of management for future operations . . . ; (C) a statement of future economic performance . . . ; (D) any statement of the assumptions underlying or relating to [any of the above]." 15 U.S.C. § 78u–5(i)(1). "The mere fact that a statement contains some reference to a projection of future events cannot sensibly bring the statement within the safe harbor if the allegation of falsehood relates to non-forward-looking aspects of the statement." *In re Stone & Webster, Inc., Sec. Litig.*, 414 F.3d 187, 213 (5th Cir. 2005). Congress did not intend to grant safe harbor protection for a statement whose falsity consists of a lie about a present fact. *Id.*

As set out above, Defendants could not honestly believe that it was "possible" bluebird would be granted a PRV from the lovo-cel application because lovo-cel, at all times, failed to meet the basic requirements for the application. [Doc. 26, ¶¶ 33–34, 41–42, 71–75, 84]. These statements were also not accompanied by "meaningful, cautionary" language that was "substantive

13

and tailored" to their assertions that bluebird could qualify for a PRV through lovo-cel. *Isham*, 665 F. Supp. 2d at 39. Moreover, Defendants statements cannot qualify as forward-looking statements because, at the time they were made, there was ***no*** "possibility" that bluebird would be granted a PRV. [Doc. 26, ¶¶ 33–34, 41–42, 71–75, 84]. Defendants false assertions informed the public that, at present, lovo-cel met the basic requirements to qualify for a PRV – namely, that bluebird had developed new technology that had not already been approved by the FDA. *Id.* These statements were not forward-looking but rather an affirmative guarantee of the company's then-present ability to meet the PRV application requirements. *In re Allaire Corp. Sec. Litig.,* 224 F. Supp. 2d at 331–32.

In that same vein, Defendants knew – and intended that – their statement reassuring the public that "no cases of insertional oncogenesis" and bluebird's new transplant procedure would lead the investors to believe the FDA would only require a safety warning on the label. *Id.* at ¶ 56. Defendants' statements as the risks associated with lovo-cel and bluebird's available evidence that lovo-cel connection to leukemia were present statements of fact. Defendants' general disclosure statements further failed to adequately warn the public as to the risk of a box warning. *Supra* § IV.A.2.

### B. Plaintiff Sufficiently Pleads Scienter.

Scienter is a "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n. 12 (1976); *ACA Financial Guaranty Corp. v. Advest, Inc.*, 512 F.3d 46, 58 (1st Cir. 2008). This circuit has held that a plaintiff can demonstrate scienter by showing that defendants either "consciously intended to defraud, or that they acted with a high degree of recklessness." *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 82 (1st Cir. 2002). Recklessness in the Section 10(b) context involves "not merely simple, or even inexcusable, negligence, but an extreme departure from the standards of ordinary care, and . . . presents a danger of misleading

14

buyers and sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Mehta* v. *Ocular Therapeutix, Inc.*, 955 F.3d 194, 206 (1st Cir. 2020) (quoting *Brennan* v. *Zafgen, Inc.*, 853 F.3d 606, 613 (1st Cir. 2017)).

In making the scienter determination, courts consider the totality of the circumstances, rather than examining each alleged omission or misstatement in isolation. *In re Cabletron Sys., Inc.,* 311 F.3d 11, 40 (1st Cir. 2002). In evaluating the adequacy of a complaint, a court "cannot hold plaintiff to a standard that would effectively require them, pre-discovery, to plead evidence." *Miss. Pub. Emps. Ret. Sys.*, 523 F.3d at 90 (quoting *Shaw*, 82 F.3d at 1225).

### 1. Defendants Knew Their Statements and Omissions Were False and Misleading.

**<u>PRV</u>**

In *In re Allaire Corporation Securities Litigation*, the defendant president of the company stated in an interview that the company's latest software product was "fueling growth" when the product was known to be defunct. 224 F. Supp. 2d at 331–32. This Court concluded that the defendant's "precise statement" that a specific product is driving profit growth for the company is actionable when the statement "could not have been believed by its maker — at least not without recklessness on his part." *Id.*

Here, Defendants cannot claim that they truly believed it was "possible" they would be granted a PRV — at least not without recklessness on their part. *Id.* The FDA rules and guidelines make clear the PRV requirements. [Doc. 26, ¶ 73]. Defendants, as the maker of both lovo-cel and Zynteglo, knew that the two shared an active ingredient. *Id.* at ¶¶ 75–76. As such, they had no basis for claiming such "possibility" when lovo-cel failed to meet the basic application requirements. *Id.* at ¶¶ 73–77.

**Black Box Warning Label**

In *Construction Industry and Laborers Joint Pension Trust v. Carbonite, Inc.*, the defendant CFO presented his statements "in the form of a statement of belief," asserting that the company "put something out that **we think** is just completely competitive and just a super strong product" and the defendant CEO stated that the product "improves our performance" and "makes us really competitive." 22 F.4th 1, 7 (1st Cir. 2021) (emphasis in original). Although defendants argued, *inter alia*, that the statements were opinions, the First Circuit explained that the use of certain phrases, such as "I think" or "I believe," to characterize a statement "does not preclude the possibility that the statement as a whole may still mislead as to some fact." *Id.* (internal citation omitted) (citing *Omnicare, Inc.* v. *Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 193 (2015)). Statements of opinion "may convey three facts: that the speaker has such a belief; that the belief fairly aligns with the facts known to the speaker; and . . . that the speaker has made the type of inquiry that a reasonable investor would expect given the circumstances." *Id.*

In addressing lovo-cel's potential label requirements and safety risks, Defendants intentionally and knowingly discredited the two clinical-trial deaths and their effect on lovo-cel's risk assessment. Defendants specifically pointed out that these deaths "were related to the procedure" and that there were "no cases of insertional oncogenesis," *i.e.*, no cases of leukemia resulting from the drug itself. *Id.* at ¶ 56. Defendants intentionally touted the lack of insertional oncogenesis cases and informed the public that the risks associated with the old procedure were in the past. *Id.* Defendants assured the public that they had implemented a new transplant procedure for lovo-cel and had sufficient evidence to show the FDA that lovo-cel is not associated with hematologic malignancies. *Id.* at ¶ 56 (informing the public that Defendants "are confident in the robustness and maturity of [their] BLA package and the review process."). As such, Defendants claimed that the two clinic-trial deaths would only result in a safety event warning on the label. *Id.*

16

at ¶¶ 56, 78. Defendants intentionally omitted material information as to lovo-cel's hematologic malignancy risk and any meaningful reference as to the extreme likelihood that lovo-cel would be required to use a boxed warning. *Id.* at ¶ 88.

### 2. There is a Strong Inference that Defendants Intended to Defraud Investors.

To determine whether there is a strong inference of scienter, courts must ask: "How likely is it that one conclusion, as compared to others, follows from the underlying facts?" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). The inference that the defendant acted with scienter need not be irrefutable, *i.e.,* of the "smoking-gun" genre, or even the "most plausible of competing inferences." *Id.* (quoting *Fidel v. Farley*, 392 F.3d 220, 227 (6th Cir. 2004)). The inference of scienter need only be cogent and compelling, thus strong in light of other explanations. *Id.*

Prior to and during the class period, bluebird was experiencing cash flow issues. *Id.* at ¶ 28. As of June 2023, bluebird needed a cash infusion to make it through 2024. *Id.* at ¶ 29. Bluebird's drug, Zynteglo, offered limited revenue potential due to its treatment capacity. *Id.* at ¶ 32. On top of that, bluebird lost its market share in Europe due to Zynteglo's high market price. *Id.* at ¶ 31. To raise much needed funds, Defendants overstated lovo-cel's abilities. *Id.* at ¶ 35.

Lovo-cel was also set to release around the same time as another competing drug, Casgevy. *Id.* at ¶ 36. Casgevy offered a more effective treatment with less risks at a lower price point. *Id.* at ¶¶ 36–40. To maintain their market share and compete with Casgevy, Defendants intentionally and knowingly misrepresented to the public its abilities to obtain a PRV – which would provide bluebird with a strong advantage for future growth or to bring in additional cash – and lovo-cel's risk assessment. *Id.* at ¶¶ 42–44.

17

**PRV**

Defendants' statements regarding the possibility of receiving the PRV and its potential sale had no factual backing. *Id.* at ¶ 72. Defendants knew that lovo-cel contained the same active ingredient as Zynteglo. *Id.* at ¶ 75. As the applicant, Defendants knew or recklessly disregarded the PRV application requirements. *Aldridge*, 284 F.3d at 78, 83 (The "classic evidence" of scienter are facts showing that the defendant knew their public statements to be inaccurate or recklessly disregarded the risk that they would be). Their only purpose for making such statements was to defraud investors and the market. [Doc. 26, ¶¶ 42–43, 87].

**Black Box Warning Label**

Defendants claim that "the potential for a box warning was something [they] anticipated." *Id.* at ¶ 81. Yet, after changing the lovo-cel procedure, they repeatedly reassured the public that the two clinical-trial deaths "were related to the [prior] procedure" and that there were "no cases of insertional oncogenesis." *Id.* at ¶ 56. Given the two clinical-trial deaths and their difficulty in convincing the FDA that lovo-cel itself was not reasonably associated with leukemia, Defendants were aware that lovo-cel was **extremely likely** to receive a boxed warning label. *Id.* at ¶¶ 65–66.

Defendants stated that the clinical-trial deaths may result in certain safety events on the label but failed to adequately and sufficiently warn the public as to the potential for a box warning. *Id.* at ¶¶ 56. Rather, Defendants repeatedly assured the public that bluebird had conducted sufficient trials and research to show that lovo-cel is not associated with hematologic malignancies and that the deaths would only result in safety events on the label. *Id.* Defendants intentionally omitted any true warning that lovo-cel would likely require a boxed label and buried their insincere warnings for a black box label deep within warning-dense documents. Defendants' intentional omission of material information is probative of scienter. *Miss. Pub. Emps. Ret. Sys.*, 523 F.3d at 87; *see also Aldridge*, 284 F.3d at 83 ("[T]he fact that the defendants published statements when

18

they knew facts suggesting the statements were inaccurate or misleadingly incomplete is classic evidence of scienter.").

## C. Plaintiff Sufficiently Alleges Claims Against Control Persons.

Plaintiff has also made allegations against the Individual Defendants under Section 20(a), which establishes liability for any person who "directly or indirectly[ ] controls any person liable" for a violation of securities laws. 15 U.S.C. § 78t(a). Moreover, Section 20(a) claims generally survive when section 10(b) claims survive. *Cabletron*, 311 F.3d at 41; *see also Nathenson v. Zonagen Inc.*, 267 F.3d 400, 426 n. 29 (5th Cir. 2001); *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 77–78 (2d Cir. 2001). Even so, control is a question of fact that is not ordinarily resolved at the pleading stage when the record is underdeveloped. *Cabletron*, 311 F.3d at 41.

## D. Alternatively, this Court Must Grant Plaintiff Leave to Amend.

As stated above, Plaintiff has sufficiently pled his claims. Should this Court find that Plaintiff has not met his burden, Plaintiff requests leave to amend his complaint. Leave to amend should be freely given. Fed. R. Civ. P. 15(a)(1). Plaintiff is continuing to investigate his claims and new information may arise.

## V.   CONCLUSION

As set forth above, Plaintiff has sufficiently alleged his claims. To increase cash flow and compete with other drugs in the market, Defendants intentionally and knowingly misrepresented to the public that it was "possible" that bluebird would be granted a PRV – which it could then turn around and sell for millions – based on lovo-cel. At the time of these statements, Defendants knew – or recklessly disregarded – that lovo-cel did not meet the requirements for a PRV because it shared an active ingredient with one of bluebird's other drugs, Zynteglo. Defendants further hid or otherwise discredited the risks associated with lovo-cel, namely that it would be given a boxed warning. These misstatements and omissions caused Plaintiff and other shareholders to purchase

19

bluebird's securities at artificially inflated prices. Defendants' motion to dismiss must therefore be denied in its entirety.

Date: December 5, 2024

/s/ William B. Federman

William B. Federman*
Jessica A. Wilkes*
*Admitted Pro Hac Vice
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
wbf@federmanlaw.com
jaw@federmanlaw.com

*Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2024. a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's CM/ECF system, which will automatically notify all counsel of record.

/s/ William B. Federman

William B. Federman

20