**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| GARRY GILL, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>      v.<br><br>BLUEBIRD BIO, INC., ANDREW OBENSHAIN, CHRISTOPHER KRAWTSCHUK, and RICHARD A. COLVIN,<br><br>      Defendants. | Civil Action No. 1:24-cv-10803<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

ARGUMENT ............................................................................................................................... 1

I.    THE AMENDED COMPLAINT FAILS TO PLEAD ACTIONABLE
MISSTATEMENTS OR OMISSIONS. ............................................................................. 1

      A.    The Amended Complaint Does Not Identify an Actionable Misstatement or
Omission About the Possible Receipt of a Priority Review Voucher. ....................1

      B.    The Amended Complaint Does Not Identify an Actionable Misstatement or
Omission About the Likelihood of a Boxed Warning. ...........................................3

      C.    All of the Purported Misstatements and Omissions are Forward-Looking
and Non-Actionable Pursuant to PSLRA's Safe Harbor. .......................................6

II.    THE OPPOSITION CANNOT SAVE PLAINTIFF'S INSUFFICIENT
PLEADING OF SCIENTER. ............................................................................................ 8

      A.    The Amended Complaint Does Not Raise a Strong and Cogent Inference of
Scienter. .................................................................................................................8

      B.    Inferences of Non-Culpable Intent Far Outweigh Plaintiff's Implausible
Theory of Scienter.................................................................................................10

III.    THE OPPOSITION APPEARS TO MISSTATE FIRST CIRCUIT PRECEDENT
REGARDING THE DISMISSAL OF CONTROL PERSON CLAIMS.......................... 12

IV.    THE OPPOSITION'S REQUEST FOR LEAVE TO AMEND THE AMENDED
COMPLAINT SHOULD BE DENIED. .......................................................................... 13

CONCLUSION.............................................................................................................................. 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re A123 Sys., Inc. Sec. Litig.*,
930 F. Supp. 2d 278 (D. Mass. 2013) ......................................................................12

*In re Allaire Corp. Sec. Litig.*,
224 F. Supp. 2d 319 (D. Mass. 2002) ......................................................................11

*Angelos v. Tokai Pharms.*,
494 F. Supp. 3d 39 (D. Mass. 2020) ........................................................................12

*In re Biogen Inc. Sec. Litig.*,
193 F. Supp. 3d 5 (D. Mass. 2016) ...................................................................7, 9, 13

*Brennan v. Zafgen, Inc.*,
199 F. Supp. 3d 444 (D. Mass. 2016) ......................................................................13

*Brill v. Invivyd, Inc.*,
2024 WL 4228832 (D. Mass. Sept. 18, 2024) ...........................................................7

*Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite. Inc.*,
22 F.4th 1 (1st Cir. 2021) .........................................................................................11

*Corban v. Sarepta Therapeutics, Inc.*,
2015 WL 1505693 (D. Mass. Mar. 31, 2015), *aff'd*, 868 F.3d 31 (1st Cir.
2017) ..........................................................................................................................7

*Corban v. Sarepta Therapeutics, Inc.*,
868 F.3d 31 (1st Cir. 2017) ......................................................................................11

*Ezra Charitable Tr. v. Tyco Int'l Ltd.*,
466 F.3d 1 (1st Cir. 2006) ..........................................................................................9

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
54 F.4th 42 (1st Cir. 2022) .........................................................................................9

*Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*,
778 F.3d 228 (1st Cir. 2015) ....................................................................................13

*Ganem v. InVivo Therapeutics Holdings Co.*,
845 F.3d 447 (1st Cir. 2017) ...................................................................................2, 9

*Leavitt v. Alnylam Pharms., Inc.*,
451 F. Supp. 3d 176 (D. Mass. 2020) .....................................................................2, 7

*Leavitt v. Alnylam Pharms., Inc.*,
    525 F. Supp. 3d 259 (D. Mass. 2021) ...................................................................................12

*Local No. 8 IBEW Ret. Plan & Tr. v. Vertex Pharms., Inc.*,
    838 F.3d 76 (1st Cir. 2016) ...................................................................................................10

*Mehta v. Ocular Therapeutix, Inc.*,
    955 F.3d 194 (1st Cir. 2020) .................................................................................................12

*Orton v. Parametric Tech. Corp.*,
    344 F. Supp. 2d 290 (D. Mass. 2004) .....................................................................................8

*Pizzuto v. Homology Meds., Inc.*,
    2024 WL 1436025 (D. Mass. Mar. 31, 2024)..........................................................................5

*Portfolioscope, Inc. v. I-Flex Sols. Ltd.*,
    473 F. Supp. 2d 252 (D. Mass. 2007) .....................................................................................5

*In re Praecis Pharms., Inc. Sec. Litig.*,
    2007 WL 951695 (D. Mass. Mar. 28, 2007)...........................................................................9

*Ramos v. U.S. Postal Serv.*,
    2024 WL 5009052 (D. Mass. Dec. 6, 2024) ...........................................................................5

*Rodríguez v. Margo-Caribe, Inc.*,
    490 F.3d 92 (1st Cir. 2007)...................................................................................................10

*Sousa v. Sonus Networks, Inc.*,
    261 F. Supp. 3d 112 (D. Mass. 2017) .....................................................................................9

*State Tchrs. Ret. Sys. of Ohio v. Charles River Lab'ys Int'l, Inc.*,
    2024 WL 3258293 (D. Mass. July 1, 2024)......................................................................8, 13

*Tellabs, Inc. v. Makor*,
    551 U.S. 308 (2007)........................................................................................................11, 12

*Zhou v. Desktop Metal, Inc.*,
    120 F.4th 278 (1st Cir. 2024)..................................................................................................5

**Other Authorities**

LYFGENIA, U.S. Food & Drug Admin. (Dec. 2023),
    https://www.fda.gov/media/174610/download........................................................................4

Defendants bluebird bio, Inc., Andrew Obenshain, Christopher Krawtschuk, and Richard A. Colvin respectfully submit this Reply Memorandum in Support of Defendants' Motion to Dismiss, in accordance with this Court's Order on the Parties' Joint Stipulation for Responding to the Amended Complaint.  (Dkt. No. 29).

## ARGUMENT

### I.    THE AMENDED COMPLAINT FAILS TO PLEAD ACTIONABLE MISSTATEMENTS OR OMISSIONS.

#### A.    The Amended Complaint Does Not Identify an Actionable Misstatement or Omission About the Possible Receipt of a Priority Review Voucher.

The Opposition fails to support the Amended Complaint's claim that Defendants made statements or omissions that left investors with the "impression" that bluebird "would be granted a priority review voucher."  AC ¶¶ 5, 58; Mot. at 14.[1]  It therefore ignores all but two of the statements identified in the pleadings relating to the PRV[2] and instead focuses exclusively on one statement made in response to a question during the Company's Q2 Earnings Call on August 8, 2023 and a second made in response to a question on the Company's Q3 Earnings Call on November 7, 2023.

On the Q2 2023 Earnings Call, when asked by an analyst from RBC Capital Markets, "will you receive the PRV? And if so, are you planning to monetize it?," bluebird's Chief Financial Officer Christopher Krawtschuk responded (in relevant part):

> As it relates to the PRV and given Rich's comments, it's possible we could receive a PRV since lovo-cel BLA was accepted for priority review for patients 12 and over.

---

[1] Citations to "Mot." refer to the Memorandum in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Dkt. No. 33), and citations to "Opp." refer to the Memorandum of Law in Support of Plaintiff's Response in Opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint.  (Dkt. No. 37).

[2] Unless otherwise noted, capitalized terms have the same meaning as in the Memorandum in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint.  (Dkt. No. 33).

AC ¶ 50. Mr. Krawtschuk responded to a question about receiving the PRV by stating only that it was "possible" one would be granted and then citing one reason that might be so. Similarly, during the Q3 2023 Earnings Call on November 7, 2023, Mr. Krawtschuk reported that "last week, we announced that we've entered into an advanced agreement to sell a priority review voucher, *if granted*, for lovo-cel for sickle cell disease for $103 million." Opp. at 10 (citing AC ¶ 54 (emphasis added)).

Plaintiff nonetheless asks the Court to accept that Mr. Krawtschuk's statements that the grant of a PRV was possible were false and misleading because "[a] brief review of the FDA rules and guidelines makes clear that lovo-cel would not qualify for a PRV" as it was just "repackaged" Zynteglo and contained the "same active ingredient." Opp. at 2, 9-10 (citing AC ¶¶ 71-73, 84). But the Amended Complaint itself acknowledges that despite Zynteglo's prior approval, bluebird was required to submit an entirely separate BLA and go through a complete and distinct approval process before receiving separate approval for Lyfgenia as a new drug, demonstrating that lovo-cel was not in fact "repackaged" Zynteglo. Mot. at 21-22. The Amended Complaint also acknowledges that a large, international pharmaceutical company negotiated and executed an agreement with bluebird prior to the FDA's decision, pursuant to which that company agreed to purchase a PRV from bluebird if one were granted—something a sophisticated third party would be unlikely to do if there were (as Plaintiff claims) no "possibility" that one would be granted. At bottom, Plaintiff's claim regarding the PRV relies entirely on the fact that the FDA ultimately did not grant the PRV. AC ¶¶ 71-77. This is fraud based on hindsight and nothing more—the agency's eventual determination on the PRV, announced on December 8, 2023, "does not demonstrate that such approval was out of the question." *Leavitt v. Alnylam Pharms., Inc.*, 451 F. Supp. 3d 176, 184 (D. Mass. 2020); *see also Ganem v. InVivo Therapeutics Holdings Corp.*, 845 F.3d 447, 456-

57 (1st Cir. 2017) (rejecting as fraud by hindsight allegations that the company's statements related to the anticipated timelines for clinical trials and FDA submission were "impossible to meet" because plaintiff there, as here, "allege[d] no facts suggesting that" the timelines were not possible to meet).

**B.      The Amended Complaint Does Not Identify an Actionable Misstatement or Omission About the Likelihood of a Boxed Warning.**

The Opposition also fails to identify any statement or omission Defendants made that lovo-cel would be approved by the FDA without a boxed warning (because none exist).  Instead, Plaintiff falls back on the theory that Defendants supposedly misled investors into believing that lovo-cel was safer than it actually was and would therefore not require a boxed warning.  *See, e.g.*, Opp. at 6-7 (citing AC ¶ 48), 11 (citing AC ¶ 56).

The Opposition makes clear that Plaintiff is focused only on two statements regarding the label that are purportedly misleading.  *See* Opp. at 5-7.  In response to direct questions during an earnings call on November 7, 2023, bluebird's CEO Andrew Obenshain stated in clear terms that the Company expected the risk of hematologic malignancy to be present on the lovo-cel label, if the FDA approved the gene therapy.  AC ¶ 56.  No particularized allegation in the pleadings establishes that Defendants knew prior to the FDA's determination that a boxed warning would be required.  Defendants did not assure investors that no boxed warning expressing the risk of hematological malignancy would be required; instead, it plainly acknowledged that the risk would be expressed somewhere on the label.

The Amended Complaint emphasizes the portion of Mr. Obenshain's answer to an analyst's question that "it is likely that we will have a mention of [the patient deaths] in the safety events in the label" and that lovo-cel had "no cases of insertional oncogenesis," claiming this statement misleadingly downplayed the possibility of a boxed warning.  *See* Opp. at 6, 11-12.  But

- 3 -

the Amended Complaint—and the Opposition—mostly ignore the immediate next sentence of Mr. Obenshain's statement: "In what part of the label or where is yet to be determined."  AC ¶ 56. Surely this additional portion of Mr. Obenshain's response precludes a reasonable investor from understanding this as an assurance that there would be no boxed warning.  His statement makes clear that the contents of the label were still to be determined by the FDA.  In any event, though the Opposition fails to address this point, there is no separate "safety events" section on the lovo-cel label; moreover, the risk of hematologic malignancy is mentioned in several portions of the label, including "Warnings and Precautions."  *See* LYFGENIA, U.S. Food & Drug Admin. (Dec. 2023), https://www.fda.gov/media/174610/download.

The Opposition also seems to take issue with Mr. Obenshain's statement at the May 11 B of A Conference where, in response to a question whether there were "[a]ny specific elements of the label" that the FDA would focus on, he responded that he "didn't think there's any one particular area that the FDA would focus on overall. I think the – if we look back at our [Zynteglo] AdCom, it was the efficacy and safety, which is pretty standard. So I don't think there's any one element that they're going to actually hold in on versus others."  AC ¶ 48; Opp. at 6-7.  His statements do not purport to address or even implicate whether the FDA would require a boxed warning.  And the Opposition identifies no allegations whatsoever that suggest that the FDA did not focus on "efficacy and safety" as Mr. Obenshain believed it would.

To the extent Plaintiff argues that Defendants painted a misleadingly "rosy picture" about the likelihood of a boxed warning by emphasizing the lack of insertional oncogenesis and stating that the two cancer cases were related to a previous transplant procedure, both of these statements are true (neither the Amended Complaint nor the Opposition claims otherwise) and, in any event, this argument misses the mark.  The Opposition instead makes entirely unsupported and

- 4 -

unexplained leaps of logic that somehow these representations gave a false sense of safety given that the drug was associated with hematologic malignancy and, therefore, it was misleading to omit the risk of a boxed warning. But Plaintiff "has not connected the dots in [his] complaint to explain why the omission would render defendants' accurate statement misleading, as required by the PSLRA." *Zhou v. Desktop Metal, Inc.*, 120 F.4th 278, 293 (1st Cir. 2024).[3] It is entirely consistent for Mr. Obenshain to note that there have been no cases of insertional oncogenesis, that he believed the cancer risk was related to the procedure, and that the disclosure of the risk of hematologic malignancy would be somewhere on the label. AC ¶ 56. Nothing Plaintiff has alleged in the Amended Complaint or argued in the Opposition suggests otherwise.

bluebird's disclosures in its SEC filings about the possibility of lovo-cel receiving a boxed warning regarding these risks only underscores the care with which bluebird provided information to the public. Ex. C at 30 (3/29/23 10-K); Ex. I at 29 (8/8/23 10-Q).[4] Plaintiff attempts to dismiss the fact that the Company made multiple, specific disclosures about the safety of lovo-cel and the potential for a boxed warning, Mot. at 4-5, by describing those disclosures as "boilerplate," "generic," and "buried." Opp. at 12. But these are precisely the sorts of disclosures that courts consider sufficient to caution investors. *See Pizzuto v. Homology Meds., Inc.*, 2024 WL 1436025, at *12 (D. Mass. Mar. 31, 2024) (holding that warnings in SEC filings that "regulatory headwinds" and "undesirable side effects" could delay or halt clinical trials or FDA approval were sufficient to caution investors). Far from boilerplate, bluebird disclosed the precise risk of which Plaintiff

---

[3] In an attempt to make this connection, the Opposition introduces an article that was not cited in the Amended Complaint. *See* Opp. at 5 n.2. However, "it is axiomatic that a Plaintiff may not amend its pleadings in the opposition memorandum." *Portfolioscope, Inc. v. I-Flex Sols. Ltd.*, 473 F. Supp. 2d 252, 256 (D. Mass. 2007); *see also Ramos v. U.S. Postal Serv.*, 2024 WL 5009052, at *4 (D. Mass. Dec. 6, 2024) ("[A]n opposition to a motion to dismiss is not the place for new factual allegations."). As such, the Court should disregard this article.

[4] Citations to exhibits refer to the exhibits attached to the Declaration of Robert G. Jones, filed concurrently with Defendants' Motion to Dismiss. (Dkt. No. 34).

complains: that lovo-cel, if approved, could be required to have a boxed warning as part of its label. *See* Mot. at 4-5 ("[R]egulatory authorities may require additional warnings on the label, including 'boxed' warnings." (quoting Ex. C at 30 (3/29/23 10-K)). Such repeated disclosures, coupled with the warning in advance that bluebird believed that the risk of hematologic malignancy would appear somewhere on the label, were more than sufficient to preclude a reasonable investor from interpreting the Company's statements to mean that bluebird would *not* receive a boxed warning.

### C.     All of the Purported Misstatements and Omissions are Forward-Looking and Non-Actionable Pursuant to PSLRA's Safe Harbor.

The Opposition argues that Defendants' statements do not qualify for the PSLRA statutory safe harbor because they were unaccompanied by meaningful, cautionary language and misstated then-present facts. Opp. at 13-14. But Plaintiff fails to examine or confront any of the specific cautionary statements themselves. Each of Defendants' challenged statements, whether in press releases, at investor conferences, or on quarterly earnings calls, were accompanied by or themselves contained meaningful, cautionary language.

For example, with regard to the potential receipt of a PRV, Mr. Krawtschuk was careful to say "it's *possible*" and the Company emphasized that its advanced agrement to sell a PRV would be completed only "*if* [the PRV were] granted." AC ¶¶ 50, 54. With regard to the contents of the label, Mr. Obenshain stated in response to a question that "it is likely that we will have a mention of [the patient deaths] in the safety events in the label. In what part of the label or where is yet to be determined." AC ¶ 56. On the same day as the Q3 2023 Earnings Call, bluebird also cautioned investors in a concurrent SEC filing that "regulatory authorities may require additional warnings on the label, including 'boxed' warnings." Mot. at 10 (citing bluebird bio, Inc., Quarterly Report (Form 10-Q) at 33 (Nov. 7, 2023)). It is precisely cautionary language of this kind (and other

language like it throughout the putative class period) that courts in this Circuit and beyond have previously found to qualify as meaningful, cautionary language. *See, e.g.*, *Leavitt*, 451 F. Supp. 3d at 186-87 (holding that statements about scope of drug label, including "the regulators need to weigh in" and "ultimately, of course, [the FDA] ha[s] to adjudicate on that," were meaningfully cautionary); *In re Biogen Inc. Sec. Litig.*, 193 F. Supp. 3d 5, 40 (D. Mass. 2016) (noting "[i]f we fail to successfully execute" as satisfactory cautionary language); *see also Brill v. Invivyd, Inc.*, 2024 WL 4228832, at *7 (D. Mass. Sept. 18, 2024) (stating use of terms like "expects," "anticipates," "to date," "likely," "yet to come," and "so far up to that point" "conveys 'some lack of certainty' as to [defendant's] statements, such that a reasonable investor would not interpret the defendants' statements to be guarantees'"). Against a long line of caselaw addressing these and similar disclosure issues involving life science and pharmaceutical risks in the FDA regulatory process, the Opposition fails to distinguish any of Defendants' cited cases.

In any event, Defendants' statements about the possibility of receiving a PRV and what would appear on the label are clear statements of opinion. Statements of opinion are only actionable if Plaintiff can allege that either (i) the opinion was false when made and was not sincerely held, (ii) facts within the opinion are not true, or (iii) material facts informing the opinion were omitted. *See Corban v. Sarepta Therapeutics, Inc.*, 2015 WL 1505693, at *6 (D. Mass. Mar. 31, 2015), *aff'd*, 868 F.3d 31 (1st Cir. 2017). The Amended Complaint does not contain any particularized allegations that would satisfy any of these requirements, and the Opposition fails to fill the gap.

## II.     THE OPPOSITION CANNOT SAVE PLAINTIFF'S INSUFFICIENT PLEADING OF SCIENTER.

### A.     The Amended Complaint Does Not Raise a Strong and Cogent Inference of Scienter.

The Opposition's attempt to show that the Amended Complaint satisfies the heightened pleading standard for scienter largely amounts to repeating conclusory allegations. *See* Opp. at 15-19. Like the Amended Complaint, the Opposition points to no allegations of contemporaneous facts that Defendants knew (or recklessly disregarded) would contradict their statements. The pleadings provide no allegations whatsoever that any Defendant *knew* at any particular time prior to December 8, 2023 that bluebird would not receive a PRV or that lovo-cel would be required to contain a boxed warning, or even that *anyone* knew during the putative class period that bluebird did not qualify for a PRV or would get a boxed warning. The absence of any contemporaneous allegation establishing a strong and cogent inference of scienter and the failure to plead those circumstances with particularity are fatal to Plaintiff's claims. *See Orton v. Parametric Tech. Corp.*, 344 F. Supp. 2d 290, 308 (D. Mass. 2004) (stating that "vague factual allegations regarding schemes and problems supposedly known to the Individual Defendants" without the "who, what, where, when, how" are insufficient for a finding of scienter); *State Tchrs. Ret. Sys. of Ohio v. Charles River Lab'ys Int'l, Inc.*, 2024 WL 3258293, at *16 (D. Mass. July 1, 2024) (holding scienter allegations insufficient because plaintiff failed to make "clear allegations of admissions, internal records or witnessed discussions" on the subject matter about which defendants knew or recklessly disregarded).

With regard to the possible receipt of a PRV, Plaintiff simply insists that Defendants *should* have known that bluebird would not get the PRV because, Plaintiff says with the benefit of hindsight, the lovo-cel BLA purportedly did not qualify. Opp. at 15. The Opposition claims as support that "Defendants, as the maker of both lovo-cel and Zynteglo, knew that the two shared

- 8 -

an active ingredient," and, "[a]s the applicant, Defendants knew or recklessly disregarded the PRV application requirements." Opp. at 15, 18; *see also* AC ¶¶ 71-77. Courts have repeatedly refused to infer scienter from broad allegations based on the nature of defendants' roles as "too broad and speculative." *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 54 F.4th 42, 55-56 (1st Cir. 2022); *Sousa v. Sonus Networks, Inc.*, 261 F. Supp. 3d 112, 120 (D. Mass. 2017) (finding bare allegations that defendants should have known the truth based on their monitoring of company sales and receiving updates on sales meetings insufficient to plead scienter); *In re Biogen*, 193 F. Supp. 3d at 51 (noting that absent a "'smoking gun' email" or similar "plus factor," courts do not infer scienter from the broad assertions that senior executives must have known about certain facts).

With regard to the boxed warning, Plaintiff's scienter argument is even more difficult to discern. The Opposition now argues that "Defendants were aware that lovo-cel was extremely likely to receive a boxed warning label" and "Defendants intentionally omitted any true warning that lovo-cel would likely require a boxed label." Opp. at 18. These allegations amount to mere "unsupported speculation." *Ganem*, 845 F.3d at 457 (1st Cir. 2017); *see In re Praecis Pharms., Inc. Sec. Litig.*, 2007 WL 951695, at *10 (D. Mass. Mar. 28, 2007) (rejecting scienter theory when no facts were pled to suggest defendants knew of and intentionally withheld information about a boxed warning).[5] Moreover, Mr. Obenshain in fact disclosed that the risk of hematologic malignancy would be somewhere on the label, leaving open the possibility that it would be included in a boxed warning, and bluebird explicitly disclosed the specific risk of a boxed warning

---

[5] Elsewhere in the Opposition, Plaintiff states, "Defendants claim that 'the potential for a box warning was something [they] anticipated," attributed to the Chief Medical Officer Richard Colvin on December 8, 2023. Opp. at 18 (quoting AC ¶ 81). It is unclear what import Plaintiff attributes to this statement. It does not contradict or render any earlier statements misleading. To the contrary, it is entirely consistent with disclosures bluebird repeatedly made in its SEC filings that lovo-cel may receive a boxed warning. *See* bluebird bio, Inc., 2022 Annual Report (ARS) at 30 (Apr. 28, 2023) ("[R]egulatory authorities may require additional warnings on the label, including 'boxed' warnings"); bluebird bio, Inc., Quarterly Report (Form 10-Q) at 28 (May 9, 2023) (same); bluebird bio, Inc., Quarterly Report (Form 10-Q) at 30 (Aug. 8, 2023) (same); bluebird bio, Inc., Quarterly Report (Form 10-Q) at 33 (Nov. 7, 2023) (same).

in its SEC filings.  AC ¶ 56; *see also* Ex. C at 30 (3/29/23 10-K) (warning that lovo-cel could receive a boxed warning).  "Attempts to provide investors with warnings of risks generally weaken the inference of scienter."  *Ezra Charitable Tr. v. Tyco Int'l Ltd.*, 466 F.3d 1, 8 (1st Cir. 2006).

> ### B.    Inferences of Non-Culpable Intent Far Outweigh Plaintiff's Implausible Theory of Scienter.

Even when a plaintiff adequately alleges specific circumstances raising a strong inference of fraud (which Plaintiff has *not* done here), securities fraud claims nonetheless are still subject to dismissal where an innocent and non-culpable inference is more persuasive than a posited culpable inference.  *Local No. 8 IBEW Ret. Plan & Tr. v. Vertex Pharms., Inc.*, 838 F.3d 76, 80-81 (1st Cir. 2016); *Rodríguez v. Margo-Caribe, Inc.*, 490 F.3d 92, 96 (1st Cir. 2007).  The Opposition ignores this comparative analysis altogether.  In several respects, facts acknowledged by Plaintiff in the pleadings, alongside statements made by bluebird, strongly indicate that Defendants simply told investors what they knew, at the time they knew it.  With regard to the PRV, for example, several analysts throughout the putative class period asked whether the FDA would grant it—suggesting that even a knowledgeable analyst class understood it was uncertain whether the FDA would do so.  The fact that a sophisticated third party negotiated with bluebird over a contingent sale of a PRV and conducted due diligence of the transaction, and that the companies announced that agreement, demonstrate that the third party (at least) appreciated that it was "possible" but not certain that the FDA would grant the PRV.

And there is no competing explanation of any benefit to bluebird or the Individual Defendants from giving any misimpression on this point.  The Opposition argues that Defendants "intentionally and knowingly misrepresented to the public its abilities to obtain a PRV" because it needed "[t]o maintain [its] market share and compete with Casgevy" "for future growth or to bring in additional cash."  Opp. at 17.  But the Opposition does nothing to explain how the allegedly

false statements helped the Company to do so.  The Amended Complaint does not claim that bluebird actually did "bring in additional cash" or "compete with Casgevy" by making such allegedly false statements.  Broad, unparticularized allegations of motive of this type amount to nothing more than "the usual concern by executives to improve financial results."  *Corban v. Sarepta Therapeutics, Inc*., 868 F.3d 31, 41 (1st Cir. 2017) (rejecting such allegations, including that "the very survival of the company w[as] on the line").  Beyond that, the Amended Complaint contains no plausible motive or justification (i.e., no stock sales, no compensation benefits) that would explain why the individual Defendants would mislead investors, *knowing* (according to Plaintiff's own theory) that the FDA would later deny the application for the PRV.  Thus, weighing the "plausible, nonculpable explanations for the defendant's conduct" against only meager, conclusory allegations that the Defendants "must have known" the statements purportedly were misleading, this Court should conclude that the Amended Complaint falls well short of pleading a strong, cogent inference of scienter.  *See Tellabs, Inc. v. Makor*, 551 U.S. 308, 310 (2007).

The two cases that the Opposition cites in support of its paper-thin scienter allegations are unavailing.  Opp. at 15-16.  In *In re Allaire Corporation Securities Litigation*, 224 F. Supp. 2d 319, 331-32 (D. Mass. 2002), the challenged statement attributed to defendants contained no hesitation or uncertainty regarding the ability of the company's program to spark growth.  Here, Defendants' statements regarding both the label and the potential receipt of a PRV were consistently expressed in terms conveying uncertainty ("possible," "if granted," "[i]n what part of the label or where is yet to be determined" (AC ¶¶ 50, 54, 56)).  Plaintiff highlights *Construction Industry and Laborers Joint Pension Trust v. Carbonite. Inc.*, 22 F.4th 1, 7 (1st Cir. 2021), in an effort to cast doubt on whether Defendants' statements regarding the boxed warning were statements of fact or statements of opinion.  But the statements in *Carbonite* that the court deemed

fact and not opinion spoke to the strength of the existing product and its competitive position—two characteristics that could plausibly be verified at the time the challenged statements were made. *Id.* Here, the challenged statements address decisions that the FDA had yet to make at the time of the statements; the Company had no way of verifying whether the agency would require a boxed warning or would grant the PRV.

The Amended Complaint fails to plead facts sufficient to give rise to a "cogent" and "compelling" inference of scienter as required by the PSLRA's heightened pleading standard, let alone one that overcomes the available, innocent inferences. *Tellabs*, 551 U.S. at 314. For this independent reason, Plaintiff's claims should be dismissed for a failure to plead scienter.

## III.  THE OPPOSITION APPEARS TO MISSTATE FIRST CIRCUIT PRECEDENT REGARDING THE DISMISSAL OF CONTROL PERSON CLAIMS.

The Opposition suggests that "control is a question of fact that is not ordinarily resolved at the pleading stage." Opp. at 19. To the extent that this language is meant to suggest that district courts do not entertain dismissal of Section 20(a) claims at the pleading stage, it misstates the law —and ignores the numerous cases in which district court judges have repeatedly dismissed Section 20(a) claims at the pleading stage. *See, e.g.*, *Leavitt v. Alnylam Pharms., Inc.*, 525 F. Supp. 3d 259, 267-68 (D. Mass. 2021) (dismissing Section 20(a) claim because the complaint failed to allege underlying Section 10(b) claims); *Angelos v. Tokai Pharms.*, 494 F. Supp. 3d 39, 60 (D. Mass. 2020); *In re A123 Sys., Inc. Sec. Litig.*, 930 F. Supp. 2d 278, 286 (D. Mass. 2013). Because the Section 20(a) claim is "derivative of [] claim[s] alleging an underlying securities law violation," and the Amended Complaint fails to allege a primary securities violation pursuant to Section 10(b), the Section 20(a) claim should also be dismissed. *Mehta v. Ocular Therapeutix, Inc.*, 955 F.3d 194, 211 (1st Cir. 2020).

## IV.   THE OPPOSITION'S REQUEST FOR LEAVE TO AMEND THE AMENDED COMPLAINT SHOULD BE DENIED.

The Court should deny the Opposition's informal request for leave to amend the Amended Complaint because Plaintiff "took no action to add new allegations" to suggest that any such amendment would not be futile and because allowing amendment after a motion to dismiss would "lead to delays, inefficiencies, and wasted work." *See Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*, 778 F.3d 228, 247 (1st Cir. 2015) (affirming dismissal of complaint with prejudice and noting that a court need not allow further amended pleadings pursuant to a request made in an opposition brief); *see also Charles River*, 2024 WL 3258293, at *17 (collecting cases); *Brennan v. Zafgen, Inc.*, 199 F. Supp. 3d 444, 472 (D. Mass. 2016); *In re Biogen*, 193 F. Supp. 3d at 55.

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice.

Dated: December 20, 2024                    **ROPES & GRAY LLP**

*/s/ Robert Jones*
Robert Jones (BBO No. 630767)
Monica Mleczko (BBO No. 696607)
Ropes & Gray LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7000
robert.jones@ropesgray.com
monica.mleczko@ropesgray.com

*Counsel for Defendants*

- 13 -

- 14 -

## <u>CERTIFICATE OF SERVICE</u>

I, Monica Mleczko, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on December 20, 2024.

/s/ *Monica Mleczko*
Monica Mleczko